## KOSHLAND v. HELVERING, COMMISSIONER OF INTERNAL REVENUE.

No. 774.   Argued May 1, 1936.—Decided May 18, 1936.

Mr. *John C. Altman* for petitioner.

*Assistant Attorney General Jackson*, with whom *Solicitor General Reed* and *Messrs. David E. Hudson, Sewall Key,* and *Berryman Green* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The writ of certiorari was granted in this case to resolve a conflict between the decision below[1] and one by the Circuit Court of Appeals for the Sixth Circuit.[2]

The question is whether, under the Revenue Acts of 1926 and 1928, a taxpayer who purchases cumulative non-voting preferred shares of a corporation upon which a dividend is subsequently paid in common voting shares, must, upon a sale or other disposition of the preferred shares, apportion their cost between preferred and common for the purpose of determining gain or loss.

The petitioner, in 1924 and 1926, purchased preferred stock of Columbia Steel Corporation. The company's articles of incorporation provided that holders of preferred stock should receive annual dividends of seven dollars a share in cash or, at the company's option, one share of common stock for each share of preferred. Dividends on the preferred were to be paid in full before any could be paid on the common; the common had voting rights, the preferred none. The preferred was redeemable at $105 per share, plus accrued dividends; and upon dissolution or liquidation was entitled to preferential payment of $100 per share, plus accrued dividends, and no more. The common alone was entitled in such event to the assets of the corporation remaining after payment of the preferred.

In each of the years 1925 to 1928, inclusive, the company had a surplus sufficient to pay the preferred dividends in cash, but elected to pay them in common stock. The petitioner received, in each of those years, shares of common stock as dividends on her preferred. In 1930 the corporation redeemed its preferred stock at $105 per

---

[1] *Commissioner* v. *Koshland,* 81 F. (2d) 641.

[2] *Commissioner* v. *Tillotson Mfg. Co.,* 76 F. (2d) 189.

share. In computing the profit realized by the petitioner the Commissioner allocated to the common stock so received, in each instance, a proportionate amount of the cost of the preferred stock. He thereby decreased the resulting cost basis per share and increased the gain. The Board of Tax Appeals reversed, holding that the dividends were taxable income, were not stock dividends within the meaning of the Revenue Acts,[3] and their receipt did not reduce the cost basis of the preferred stock. The Circuit Court of Appeals reversed the Board and approved the Commissioner's action.

The petitioner contends, first, that the dividends she received were not stock dividends exempted from taxation by the revenue acts; and, secondly, if exempted, they were none the less income and cannot be treated as returns of capital in computing capital gain or loss. The respondent answers that the distributions were stock dividends because made in the capital stock of the corporation and come within the plain meaning of the provisions exempting stock dividends from income tax; accordingly, the Treasury regulations have consistently and continuously treated them as returns of capital, and required the original cost to be apportioned between the shares originally acquired and those distributed as dividends to obtain the cost basis for the calculation of gain or loss. We hold that the dividends were income and may not be treated as returns of capital.

The Revenue Act of 1913 imposed an income tax on dividends.[4] In *Towne* v. *Eisner,* 245 U. S. 418, it was held that where a corporation declared a dividend on its common stock, in the form of common stock, the dividend was not income within the intendment of the act.

---

[3] Revenue Act of 1928, § 115 (f), c. 852, 45 Stat. 791, 822; Revenue Act of 1926, § 201 (f), c. 27, 44 Stat. 9, 11: "A stock dividend shall not be subject to tax."

[4] 38 Stat, 114, 166, 167.

The Revenue Act of 1916 provided that a stock dividend should be considered income to the amount of its cash value.[5] In *Eisner* v. *Macomber,* 252 U. S. 189, it was decided that a dividend in the corporation's common stock paid to the then common stockholders, was not income within the meaning of the Sixteenth Amendment and therefore the effort to tax such dividends exceeded the power granted by the Amendment. It was said that such a dividend was not income because, by its payment, no severance of corporate assets was accomplished and the preëxisting proportionate interests of the stockholders remained unaltered. After the decision the Treasury revoked regulations to the effect that a dividend paid in the corporation's stock is income and issued amended regulations, broadly phrased, to exempt all income in the form of stock dividends, whether the dividend shares be of the same class as those theretofore held by the stockholder or of a different class, and prescribing the method of allocating the original cost as between the old and the new stock for purposes of calculating gain or loss upon realization. Subsequently Congress adopted the Revenue Act of 1921 which provided, in § 201 (d): "A stock dividend shall not be subject to tax . . ."[6] The reason for the exemption was the decision in *Eisner* v. *Macomber, supra.* The reports of both the House and the Senate Committees dealing with the bill state that the act "modifies the definition of dividends in existing law by exempting stock dividends from the income tax, as required by the decision of the Supreme Court in *Eisner* v. *Macomber* (252 U. S. 189)."[7]

---

[5] 39 Stat. 756, 757. Compare Revenue Act of 1918, 40 Stat. 1057, 1059.

[6] 42 Stat. 227, 228. The same provision was repeated in all subsequent revenue acts; Revenue Acts of 1924 and 1926, § 201 (f); Revenue Acts of 1928, 1932 and 1934, § 115 (f).

[7] H. R. 350, 67th Cong., 1st. Sess., p. 8. Senate Report No. 275, 67th Cong., 1st Sess., p. 9.

Although *Eisner* v. *Macomber* affected only the taxation of dividends declared in the same stock as that presently held by the taxpayer, the Treasury gave the decision a broader interpretation which Congress followed in the Act of 1921. Soon after the passage of that Act, this court pointed out the distinction between a stock dividend which worked no change in the corporate entity, the same interest in the same corporation being represented after the distribution by more shares of precisely the same character, and such a dividend where there had either been changes of corporate identity or a change in the nature of the shares issued as dividends whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest.[8] Nevertheless the successive statutes and Treasury regulations respecting taxation of stock dividends remained unaltered.[9] We give great weight to an administrative interpretation long and consistently followed, particularly when the Congress, presumably with that construction in mind, has reenacted the statute without change.[10] The question here, however, is not merely of our adopting the administrative construction but whether it should be adopted if in effect it converts an income tax into a capital levy.

We are dealing solely with an income tax act. Under our decisions the payment of a dividend of new common shares, conferring no different rights or interests than did the old,—the new certificates, plus the old, representing the same proportionate interest in the net assets

---

[8] *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; *Cullinan* v. *Walker*, 262 U. S. 134; *Marr* v. *United States*, 268 U. S. 536.

[9] See Regulations 65 and 69, Articles 1547, 1548; Regulations 74 and 77, Articles 627, 628; Regulations 86, Articles 115-7, 115-8.

[10] *Poe* v. *Seaborn*, 282 U. S. 101, 116; *McCaughn* v. *Hershey Chocolate Co.*, 283 U. S. 488, 492; *McFeely* v. *Commissioner*, 296 U. S. 102, 108.

of the corporation as did the old,—does not constitute the receipt of income by the stockholder. On the other hand, where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented he receives income. The latter type of dividend is taxable as income under the Sixteenth Amendment. Whether Congress has taxed it as of the time of its receipt, is immaterial for present purposes.

The relevant capital gains provisions of the Revenue Act of 1928 are § 111 (a):

". . . the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in Section 113 . . ." [11]
and § 113:

"The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; . . ." (with exceptions having no relevancy here).[12]

The property disposed of was the petitioner's preferred stock. In plain terms the statute directs the subtraction of its cost from the proceeds of its redemption, if the latter sum be the greater. But we are told that Treasury Regulations [13] long in force require an allocation of the original cost between the preferred stock purchased and the common stock received as dividend. And it is said that while no provision of the statute authorizes a specific regulation respecting this matter, the general power conferred by the law to make appropriate regulations comprehends the subject. Where the act uses ambiguous terms, or is of doubtful construction, a clarifying regulation or one indicating the method of its application to specific cases not only is permissible but is to be given great weight by the courts. And the same principle

---

[11] 45 Stat. 815.

[12] 45 Stat. 818.

[13] Regulations 74, Articles 58, 628, and 600.

governs where the statute merely expresses a general rule and invests the Secretary of the Treasury with authority to promulgate regulations appropriate to its enforcement. But where, as in this case, the provisions of the act are unambiguous, and its directions specific, there is no power to amend it by regulation.[14] Congress having clearly and specifically declared that in taxing income arising from capital gain the cost of the asset disposed of shall be the measure of the income, the Secretary of the Treasury is without power by regulatory amendment to add a provision that income derived from the capital asset shall be used to reduce cost.

The judgment is

*Reversed.*

MR. JUSTICE STONE and MR. JUSTICE CARDOZO are of the opinion that the judgment should be affirmed.

The meaning of the Act of Congress exempting stock dividends from taxation as income at the time of distribution has had a practical construction through administrative action and legislative acquiescence. Even though the meaning may have been uncertain in the beginning, it has now become fixed in accordance with long continued practice. *Morrissey* v. *Commissioner,* 296 U. S. 344, 355; *Helvering* v. *Minnesota Tea Co.,* 296 U. S. 378, 384. This is not denied in the opinion of the court. Congress did not intend, however, when it refused to tax the newly acquired shares as income *in praesenti,* to exclude them from taxation *in futuro* if disposed of at a profit. A tax upon a gainful use either of capital or of income, when the gain is fully realized, is a true tax upon income and not a capital levy. The question is merely one as to how the profit shall be computed. Following the analogy

[14] *Manhattan General Equipment Co.* v. *Commissioner,* 297 U. S. 129, and cases cited.

of *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, 253, the cost of all the shares is properly distributed between the investment and its accretions, between the old shares and the new. The Regulations so provide. Regulations 45, 1916 Act, Article 1547; Regulations 65, 1924 Act, Articles 1547 and 1548; Regulations 69, 1926 Act, Articles 1547 and 1548; Regulations 74, 1928 Act, Articles 627 and 628; Regulations 77, 1932 Act, Articles 627 and 628; Regulations 86, 1934 Act, Articles 115–7 and 115–8.