## PATTERSON v. ANDERSON, Former Collector of Internal Revenue.

District Court, S. D. New York.
Aug. 30, 1937.

James S. Y. Ivins, of Washington, D. C., for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty. of New York City, James W. Morris, Asst. Atty. Gen. and Andrew D. Sharpe and Frank J. Ready, Sp. Assts. to Atty. Gen., of counsel), for defendant.

PATTERSON, District Judge.

The action is one at law to recover an alleged overpayment of income tax for 1919. A jury was waived.

The plaintiff filed his return for 1919 in due course, showing a tax liability. of $76,352.89, which amount he paid. Later proceedings between the Commissioner and the plaintiff resulted in the finding of a deficiency of $95,115.52 by the Board of Tax Appeals, and the decision of the Board was affirmed by the Circuit Court of Appeals. The point then in controversy was whether the plaintiff was entitled to deduct a loss claimed by him in his return. The plaintiff paid the deficiency. He then filed claims for refund to recover part of the tax paid, alleging that four items originally reported by him as income were not in truth taxable income for 1919, and on denial of the claims for refund brought the present action to recover the tax. None of the four items had been involved in the proceeding before the Board of Tax Appeals.

The first item is the sum of $8,273.76 received by the plaintiff as royalty from Standard Tobacco Steamer Company. The contract under which the royalty was received was one made prior to March 1, 1913, for services rendered prior to that date, and it had a capital value on March

1, 1913, in excess of what the plaintiff had received under it. The amount so received by the plaintiff in 1919 was accordingly not taxable income. Platt v. Bowers, 13 F.(2d) 951 (D.C.N.Y.). The defendant concedes as much.

The second item is an amount of $18,745. The plaintiff owned stock in American Machine & Foundry Company. He received scrip dividend certificates of the face value of $18,745 on September 16, 1918, the scrip being payable one year later. He turned the scrip in on September 16, 1919, and received cash of $18,745, together with interest. The parties have stipulated that the scrip was worth face value when issued.

The income was received by the plaintiff in 1918, when he received the dividend in scrip. The fact that it was not until 1919 that the scrip was turned in and cash received makes no difference. The government's contention that there was a receipt of income in 1919 is in the teeth of its own regulation. By article 1544 of Regulations 45, applicable to the Revenue Act of 1918 (40 Stat. 1057), "scrip dividends are subject to tax in the year in which the warrants are issued." Similar provisions have appeared in all regulations down to the present day. This administrative interpretation consistently followed carries great weight, particularly when Congress, presumably with that interpretation in mind, has re-enacted the statute without change in the applicable sections. Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127, 75 L.Ed. 264; Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756. The merits are with the plaintiff as to the $18,745 received as scrip dividend in 1918.

The third item in dispute is $125,322.57, received by the plaintiff in 1919 as insurance premiums. The facts are peculiar. The plaintiff, Harriss and Hawkins were stockholders in International Arms & Fuze Company. The plaintiff and Harriss each owned twelve twenty-fifths of the stock, Hawkins one twenty-fifth. The company had been engaged for some years in making explosives for war purposes, with a plant in New Jersey. The rates for fire insurance covering such a plant rose to high levels. In lieu of taking out insurance with fire insurance companies, an arrangement was made that the plaintiff and Harriss would write the fire insurance on the company's plant. On July 1, 1918, the plaintiff wrote a policy insuring the company against loss by fire in the amount of $3,500,000, to expire on June 30, 1919. The premium to be paid was fixed at $157,500, payable monthly. Harriss wrote a similar policy. In October, 1918, Hawkins wrote a policy for one-twelfth of this amount, receiving premiums at the same rate, although the policy in his case covered only ten months. The plaintiff received $78,749.99 in premiums from January 1, 1919, to June 30, 1919. Between July 1, 1919, and December 18, 1919, he received further sums totaling $46,572.58 as premiums, although no formal extension of the insurance to cover this period seems to have been made. The plaintiff included both amounts in his 1919 return as part of his income.

The plaintiff's argument is that the insurance policies were void, since the law of New Jersey forbade persons to make contracts of insurance unless authorized to do an insurance business, that the premiums were therefore received by the plaintiff without consideration, and that they must be treated as in reality liquidating dividends, it being the fact that the company in 1919 was preparing to wind up its business. This argument cannot be accepted. While the policy may have been uncollectible under New Jersey law and the plaintiff may have been earning money from a prohibited business, he nevertheless made earnings from it. Earnings from an unlawful business constitute taxable income. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020. There is nothing to indicate that the arrangement was actually meant to be one for distribution of corporate assets under the guise of insurance premiums. The amounts received after expiration of the policy were likewise income, for the parties treated the insurance as still in force and must be taken as having assented to an extension of the policy. The amount received as insurance premiums by the plaintiff was properly included in his taxable income.

The fourth item is $70,800 received as commissions. International Arms & Fuze Company found it necessary to borrow money from banks. The banks required the personal indorsement of the plaintiff and Harriss on the company's notes. The company, by resolution of the board of directors at a meeting on January 3, 1918, agreed to pay the plaintiff

and Harriss a 10 per cent. commission for the personal indorsements. As loans supported by personal indorsement of the plaintiff and Harriss were effected, the company gave its notes for 5 per cent. of the loans to the plaintiff as his commission and gave like notes to Harriss, and this practice was followed as to renewal loans as well as to original loans. In due course the company paid to the plaintiff the notes it had given him as compensation for his indorsements. In 1919 the plaintiff received from the company $159,840, paid as commissions or compensation for indorsement on renewal loans. The plaintiff reported the entire sum as income for 1919. It was later shown that of the total figure $89,040 was in payment of notes issued by the company to the plaintiff in 1918 and included by him in his 1918 return, and the Commissioner eliminated this amount from the 1919 income. The plaintiff's present contention is that the remainder, $70,800, was not taxable income.

It is argued that the corporate resolution did not entitle the plaintiff to compensation for personal indorsements on renewal loans, and that consequently the payments received by the plaintiff must be regarded as liquidating dividends on his stock investment. But there is no reason for treating the payments in any other way than as the parties treated them at the time. The plaintiff's right to compensation for guaranteeing renewal loans was as valid as for his guaranty of original loans. There is no warrant for restricting the corporate resolution to transactions of the latter type. The sum of $70,800 was income to the plaintiff for 1919.

The defendant submits that the Commissioner erred in dropping $89,040 from the 1919 return, and that this amount should be included in the taxable income for 1919. The Commissioner did not err in treating this part of the commissions as income for 1918 instead of 1919. It was earned in 1918, and the plaintiff's receipt of notes for it amounted to the receipt of income.

There is one further point. At the opening of trial the defendant moved that the case be dismissed for lack of jurisdiction. The argument is that the prior proceeding before the Board of Tax Appeals settled once and for all the amount of the plaintiff's income tax for 1919. This point was raised prior to the trial by a motion to dismiss for lack of jurisdiction. Judge Goddard heard the motion and ruled against the defendant. His decision is the law of the case for the District Court and precludes any consideration of the point at the present stage. Commercial Union v. Anglo-South American Bank, 10 F.(2d) 937 (C.C.A.2).

Findings and conclusions in the plaintiff's favor on the first and second items and in the defendant's favor on the remaining items may be submitted.