## GLENN L. MARTIN CO. v. UNITED STATES.

No. 6140.

District Court, D. Maryland.

Dec. 8, 1937.

Semmes, Bowen & Semmes, of Baltimore, Md. (W. Randall Compton, of Baltimore, Md., and John T. Koehler, of Washington, D. C., of counsel), for plaintiff.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., and Stephen J. England, Sp. Asst. to Atty. Gen., for the United States.

CHESNUT, District Judge.

## Findings of Fact

1. The principal facts of the case are included in a stipulation of counsel filed December 3, 1937, which are hereby adopted as findings of the court.

2. In addition thereto the plaintiff submitted oral testimony of M. G. Shook, the treasurer of the plaintiff corporation. His testimony was further explanatory of the stock transaction set out in the stipulation of facts. It established, and I find therefrom as facts, that the surrender of the 150,000 shares of then outstanding capital stock of the plaintiff corporation was made by the stockholder, Glenn L. Martin, for cancellation and retirement, and was made without any actual consideration from the corporation or others to him. The reason for this voluntary surrender was that, as a matter of financial policy, it was considered to be desirable to effect a change in the corporate capitalization by cancelling and retiring that amount of the stock of the corporation, with a consequent pro rata reduction in the amount of capital assigned to issued stock, and the transfer thereof to surplus. It was thought that the resulting change in the balance sheet of the corporation would put the latter in better position for refinancing which was then in contemplation. Pursuant to this plan the Board of Directors passed on April 6, 1934, the resolution set out in the stipulation of facts, that the Company accept surrender of the stock; and on April 10, 1934, the stock certificate was physically endorsed by Glenn L. Martin and handed to the treasurer of the corporation "for cancellation." The subsequent formal action of the Board of Directors and the filing of the certificate as to the reduction of the issued capital stock of the corporation with the State Tax Commission of Maryland, pursuant to the corporation laws of that State, was only the appropriate legal method for carrying through the financial policy and stock surrender previously agreed upon.

## Conclusions of Law

1. The conclusion of law is that on the facts stipulated and found the stock transaction was not taxable under the Revenue Act of 1926, c. 27, 44 Stat. 9, 101, § 800, Schedule A, par. 3, as amended by the Revenue Act of 1932, § 723(a), 47 Stat. 272, 26 U.S.C.A. § 902(b).

2. The plaintiff is entitled to recover the total amount of the tax paid, $6,038.00, with interest thereon as provided for in the specially applicable statute, 28 U.S.C.A. § 284.

## Opinion

The disputed tax was assessed and collected under the Revenue Act of 1926, c. 27, 44 Stat. 9, 101, § 800, Schedule A, par. 3, as amended by the Revenue Act of 1932, § 723(a), 47 Stat. 272, 26 U.S.C.A. § 902 (b), the relevant portion of which reads as follows:

"3. Capital stock (and similar interests), sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subdivision 2, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), on each $100 of par or face value, or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued), 4 cents, and where such shares or certificates are without par or face value, the tax shall be 4 cents on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other organization share, as the case may be)."

The applicable Treasury Regulations 71 (1932) provide in part as follows:

"Article 35. *Sales or transfers not subject to tax.* The following are examples of transactions not subject to the tax: * * * f. The surrender of stock for extinguishment or in exchange for new certificates to be issued without change of legal title."

It is stated in the brief of counsel for the plaintiff without contradiction from counsel for the defendant, that:

"The above statute has been in effect without change material hereto since 1918.

The Regulations under the Revenue Acts of 1918, 1921, 1924, 1926, 1928 and 1932 (the present Regulations) contained exactly the same wording as that quoted above, with the exception (not material here) that the final words 'legal title' were, under the Act of 1932, substituted for the previous word 'ownership.' Consequently the Regulations for nineteen consecutive years, during which period nine Revenue Acts have been passed, have stated 'The surrender of stock for extinguishment * * * (is one of the) * * * examples of transactions not subject to the tax.' "

This being so, the well-established rule is that the above regulations have in this case the force and effect of law. Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289; United States v. Cerecedo Hermanos y Compania, 209 U.S. 337, 28 S.Ct. 532, 52 L.Ed. 821; White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. ——, November 8, 1937; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528; Koshland v. Helvering, 298 U.S. 441, 56 S. Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756.

It seems entirely clear from the facts stipulated and found that the 150,000 shares of stock were both surrendered *for extinguishment* and thereafter, in due course of legal procedure, *actually* extinguished. The legal procedure was in accordance with the applicable Maryland statutory law affecting business corporations. Maryland Code Supp. 1935, art. 23, §§ 32, 50 (1, 4, 5).

■ The contention of counsel for the Government is that the transaction was taxable because when the certificate was endorsed and delivered to the treasurer of the corporation, the appropriate corporate resolution had not previously been passed, and therefore at the precise moment of time that the stock certificate was physically delivered there was not an instantaneous and immediate legal extinguishment of the stock. This contention seems to be without legal merit. As the stock certificate was *voluntarily* donated for cancellation and surrender to achieve the object of the financial policy agreed upon, it is natural that the formal corporate resolution followed rather than preceded the surrender of the stock. The delivery of the stock certificate was, however, by the endorsement expressly made only for *cancellation*. The expression in the endorsement "for value received" was obviously only the usual form of en-

dorsement printed on the back of the certificate, as the delivery in this case is clearly shown to have been without actual consideration or value received.

The legal effect of the transaction shown to have been intended in its inception and finally consummated in appropriate legal form was the actual retirement of the stock. The surrender of the stock did not transfer to the corporation any title or ownership therein, either beneficial or only legal, as it was delivered expressly for cancellation, and was intended to be retired and extinguished, and not to be kept alive for any purpose. The legal distinction important here is that between the surrender and retirement of issued stock, and the transfer of stock to a corporation to be held as *treasury stock*. In the former case, which is the one we have here, the stock was intended to be and was actually retired, and had the status thereafter of stock *authorized to be issued* but not issued; and thereafter the corporation could not have properly reissued the stock so retired except on the same conditions and under the same Maryland corporate law provisions as applied to originally authorized but unissued stock. In contradistinction therefrom, stock, transferred or delivered to a corporation by a stockholder to be held as treasury stock, is held by the corporation for its own use, benefit and disposition without the legal requirements pertaining to the original issue of authorized but unissued stock; and treasury stock is not in fact cancelled or extinguished but is kept alive as a treasury asset of the corporation.

■ The defendant's contention that, even though the stock was intended to be extinguished, nevertheless the transaction was taxable because the formal directors' resolution authorizing the filing of the formal certificate of reduction and the actual filing of the latter did not occur until some weeks after the date of the physical delivery of the certificate, is untenable. The fact is that on April 6, 1934, before the stock certificate was surrendered, the matter had evidently been considered by the Board of Directors because their resolution of that date authorized the receipt from Glenn L. Martin of "*the* 150,000 shares." This use of the definite article indicates that the matter had received previous consideration. The subsequent interval elapsing before the passage of the more formal corporate resolution and the making and filing of the

certificate of reduction of issued capital stock had no significance other than that it necessarily took some little time to obtain another meeting of the Board of Directors; and to have the necessary papers prepared by counsel. This interval of time is in this case at least in no way suggestive of any change in the nature of the original transaction or otherwise characteristic of an afterthought.

The language of the regulations interpreting the statute plainly says that the transaction was not to be taxable if the stock was surrendered "for extinguishment," which quite clearly implies that the legal formalities to accomplish the purpose can be subsequently complied with. In the particular case it is clearly shown that at the time of the physical delivery of the certificate the parties intended, in accordance with their ideas as to desirable financial policy, that the stock should be extinguished, and the subsequent legal proceedings merely put into final form and legal effect what was previously intended.

█ The scope of this taxing statute has recently been succinctly but comprehensively stated by Mr. Justice Stone for the Supreme Court in Raybestos-Manhattan v. United States, 296 U.S. 60, 62, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111: "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. See Provost v. United States, 269 U.S. 443, 458, 459, 46 S.Ct. 152, 70 L.Ed. 352." The stock transaction in this case does not fall within the statute so described. Here the corporation did not become a shareholder with respect to the 150,00 shares of stock, nor did it receive or obtain the right to receive any beneficial interest therein, or in the assets of the corporation. While the certificate was surrendered to the corporation, no rights therein became vested in it. It physically received and held the certificate for cancellation only and could have been enjoined from any other use or disposition of it.

It results necessarily that the delivery of the stock on April 10, 1934, was for extinguishment within the meaning of the regulations and was not a taxable delivery or transfer of legal title within the meaning of the taxing statute.

For these reasons the plaintiff is entitled to recover the amount of the tax which it has been required to pay, in the amount of $6,038.00, with interest thereon in accordance with the provisions of 28 U.S.C.A. § 284. Counsel should agree upon and submit for approval the special form of verdict required, on which judgment in the same form will be entered by the clerk in due course.

I have refused the request for legal instructions submitted by counsel for the defendant, and also the conclusions of law requested by them, and have overruled the motion for judgment made by them, with exception noted.