### SAKS et al. v. HIGGINS, Collector of Internal Revenue.

District Court, S. D. New York.
Oct. 27, 1939.

Maass & Davidson of New York City (David J. Levy, of New York City, of counsel), for plaintiffs.

John T. Cahill, U. S. Atty., of New York City (David McKibbin, 3rd, Asst. U. S. Atty., of New York City, of counsel), for defendant.

GODDARD, District Judge.

The case came on for hearing on motion of plaintiffs for judgment on the pleadings and the cross motion by the defendant for

judgment in his favor. There is no dispute as to the facts and the sole issue of law presented is the validity of Article 11, Regulation 80, which was adopted by the Commissioner of Internal Revenue as an interpretation of Section 202(a) of the Revenue Act of 1935, 26 U.S.C.A. § 411(j). The entire case turns upon the point as to whether or not the regulation is in harmony with the Statute and is a reasonable exercise of the Commissioner's power to make rules and regulations for the enforcement of the Revenue Act. See Section 1101 of the Revenue Act of 1926, 26 U.S.C.A. § 1691(a) (1).

The pleadings show that plaintiffs are the duly appointed Executors of the Last Will and Testament of Ida H. Saks who died on August 30, 1936, a resident of New York City. As such Executors, they filed a Federal Estate Tax return in which they elected, in accordance with Section 202(a) of the Revenue Act of 1935, to have the property of the estate valued for the purposes of the estate tax as of the "optional valuation date" rather than as of the date of the decedent's death. Section 202(a) of the Revenue Act of 1935 amends Section 302 of the Revenue Act of 1926, 44 Stat. 70, 26 U.S.C.A. § 411, so as to provide for such an election in the following manner: "If the executor so elects upon his return * * * the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, except that (1) property included in the gross estate on the date of death, and, within one year after the decedent's death, distributed by the executor * * * or sold, exchanged, or otherwise disposed of, shall be included at its value as of the time of such distribution, sale, exchange, or other disposition, whichever first occurs, instead of its value as of the date one year after the decedent's death * * * ."

■ The obvious purpose of the section was to afford estates some relief from the hardships that might be imposed upon them if the estate tax had to be computed exclusively upon the basis of values existing on the date of the decedent's death. The Committee's reports show that Congress had in mind the situation faced by an executor who took office in a time of rapidly falling markets. In such situations, some executors found that their estates soon had diminished to an amount barely suffi-

cient to pay an estate tax based upon values which had existed only at the time of their decedent's death. This possible hardship the section sought to alleviate.

In this action the executors seek to recover from the Collector the amount which they paid under protest as estate tax upon the income received by the estate during the interim between the date of their decedent's death and the optional valuation date. Article 11, Regulations 80, requires such income to be included in the return. The theory underlying Article 11, Regulations 80, is that "all the property included (in the gross estate) on the date of death * * * " must be interpreted as having a dual nature. Article 11, Regulations 80, relating to the Federal Estate Tax, is lengthy but the pertinent part of it provides:

"The property to be valued, as of one year after the date of decedent's death, or as of date of decedent's death, or as of some intermediate date, is the property included in the gross estate on the date of the decedent's death. As property and its value are separate and distinct, the former denoting legal rights, the latter the monetary measure of such rights, and as subdivision (j) treats of the two separately, it will be necessary in every case first to determine what property constituted the gross estate at decedent's death. * * *

"Interest-bearing obligations, such as bonds and notes, embody two promises, one to pay principal and the other to pay interest, and both promises are a part of the gross estate at the death of the decedent, if the obligation was then owned by him, or had been previously so transferred by him, or at his death there was vested in him any such right or power in or with respect to the obligation as to bring it within any of the other subdivisions of section 302, as amended. If the valuation date is that of decedent's death the principal of the obligation and interest then accrued and unpaid thereon are to be valued as of that date. If the valuation date is subsequent to death, the principal and interest then accrued and unpaid are to be valued as of that date. The valuation date of any part payment of principal or of any installment of interest, made between decedent's death and the date as at which the obligation is to be valued, will be the date of such payment. Like rules will govern, so far as applicable, when any other obligation is involved, as, for example, one

calling for the payment of rent or a royalty. Thus, in the case of rent, if the realty and the obligation to pay the rent reserved were parts of the gross estate at the time of decedent's death, the value of the former must be determined as of the applicable valuation date, and also the value of the rent then accrued and unpaid reserved by the latter. The valuation date of any rent paid in the interim pursuant to the rental obligation will be the date of its payment."

\* \* \* \*

"When corporate stock is a part of the gross estate at decedent's death, and a dividend in partial liquidation is thereafter paid on or before the date as of which the stock is to be valued, the valuation date of such dividend will be the date of its payment. Similarly, a dividend paid within the same period out of earnings, whether made or accumulated prior or subsequent to decedent's death, will be valued as of the date of its payment. Earnings of the corporation neither declared as a dividend nor paid between decedent's death and the valuation date of the stock, will be reflected in the value of the stock. But a dividend declared prior to the valuation date of the stock but payable subsequent thereto will not be so reflected if 'ex dividend' on valuation date of the stock, but is to be valued as of that date."

Plaintiffs argue that the option granted to estates by Section 202(a) of the Revenue Act of 1935 did not change the concept of "Gross Estate", and does not require that income earned and collected after the date of death shall be included therein. It is said that so far as Article 11, Regulations 80, attempts to tax such income it is unauthorized and void as an attempt to extend a law which it purports to interpret.

At the outset it should be stated that although it is true that where an Act uses ambiguous terms or is of doubtful construction, a clarifying regulation or one indicating the method of an Act's application to specific cases is to be given weight by the courts, the interpretation of a statute always remains the function of the judiciary. The regulation cannot change what the Act originally meant. See Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756. Clearly, Article 11, Regulations 80, is an interpretative regulation and does not lay down merely an administrative rule with respect to a matter of tax procedure. As such it can only be sustained if the Commissioner has interpreted the statute in a reasonable fashion.

In my judgment, the Commissioner has interpreted the statute in a reasonable manner and defendant's motion for a summary judgment should be granted. First, I think that it is reasonable to interpret the phrase "all the property included (in the gross estate) on the date of the decedent's death" as meaning all the principal and income rights included in the estate on the date of death. Certainly, even in the case in which the return is made on the basis of values as of the date of death and there is no election, the valuation then made necessarily has to take into account both principal rights and income rights. Thus, a bond must be returned at the price at which it was quoted upon the open market, plus all income accrued to date of death, even though the decedent would not have received that particular accrual unless he survived the payment date. This indicates that the "property" referred to in the Estate Tax Law has a dual nature and in view of the interests into which property is often divided, such as life estates and remainders, no new theory is involved in this construction of the term.

Secondly, it is reasonable to measure the revaluation of the income rights included in the estate at the date of death by what was actually received as income during the option period. It must be remembered that the election does not have to be made until after the year has expired and so, at the time when it is made, the income actually earned during the year is a counterpart of what should be taken into consideration in appraising at the date of death the probable increase in the value of the income rights which were then included in the estate. Similarly, in the case of principal gains the amount actually realized during the period is the measure for the purposes of revaluation. It may be noted that plaintiff's argument to the effect that income earned after death cannot be considered to be a part of the property which is to be revalued, because it is not present in the estate at the time of death, is equally applicable to capital gains made by the estate after death.

Like the income received during the year, these gains would not be taxed if the return was made upon the basis of date of death values. At the time of the decedent's death they, like the income, were only "property" included in the estate insofar as they were directly attributable to the principal rights which were part of that property. Yet plaintiffs admit that such gains are taxable if the election is made.

■■ Thirdly, as interpreted by the Commissioner, the statute is in harmony with the theory that the Estate tax is an excise tax upon the power to pass property and is measured by what the decedent has at his disposal at the moment of his death. New York Trust Co. v. Eisner, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660; Schuette v. Bowers, 2 Cir., 40 F.2d 208. In effect, what the statute says is that an executor may assume, if he so desires, that his decedent died a year later than he actually did and the estate tax will then be levied as if the event upon which it is dependent had also happened at the later date. Thus to be consistent, everything that is found in the estate at the end of the year after death should be taxed even though part of what is then in the estate originally may have been income.

■ It has also been argued that the Commissioner's interpretation of the statute results in a taxation of the income received during the option period by both the Income and the Estate Tax Laws and that the court should, if possible, avoid an interpretation which results in a double taxation. See Bull v. United States, 295 U.S. 247, 55 S.Ct. 695; 79 L.Ed. 1421; United States v. Supplee-Biddle Hardware Co., 265 U.S. 189, 44 S.Ct. 546, 68 L.Ed. 970. But this rule is not applicable to the case at bar. First, whatever double taxation there is, it results primarily from an election made by the executor. Secondly, even if the statute were interpreted so as to exclude income earned during the option period from the estate tax, the statute would still result in a double taxation. The capital gains made during the year would be both income and part of the gross estate. Thirdly, there is such a double taxation even where there is no election. For example, if right after a death it is found ·that a decedent's bank account contains a large sum of cash that he has but recently received from his various securities and for which his executors must satisfy his income tax liability, this sum is also included in his estate and is subject to the estate tax along with everything else that belongs to him at the moment that he dies.

■ In view of the fact that there has been no reported litigation with respect to Article 11, Regulations 80, I do not think that Congressional re-enactment of the Estate Tax Law, including Section 202(a) of the Revenue Act of 1935, can be characterized as an indication of that body's approval of the regulation adopted by the Commissioner with respect to the section. But for the reasons which I have set forth, it is my opinion that the regulation is a reasonable interpretation of the statute and defendant's motion is therefore granted.