*Decision will be entered under Rule 50.*

ALFRED E. STERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IRVIN STERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FANNY C. HOLZHEIMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 105438, 105439, 105440. Promulgated February 24, 1942.

*Arthur B. Schaffner, Esq., Harry B. Sutter, Esq.,* and *Peter L. Wentz, Esq.,* for the petitioners.

*John D. Kiley, Esq.,* for the respondent.

418

OPINION.

VAN FOSSAN: The petitioners' denial of the taxability of the preferred stock dividend in controversy rests on five contentions.

The first is that the stock dividend was not taxable under the law when distributed, They support this contention by the argument

that from the date of passage of the Revenue Act of 1921 until June 22, 1936, the day on which the Revenue Act of 1936 was enacted, all stock dividends were exempt from taxation by specific provision of the intervening revenue acts. With the 1936 Act, however, the law was changed. Constitutionality was made the test. The stock dividend in question here was not constitutionally exempt from taxation. It gave the holder of common stock an interest different from that represented by his common stock and, hence, was taxable. *Koshland* v. *Helvering*, 298 U. S. 441; *Strassburger* v. *Commissioner*, 124 Fed. (2d) 315, affirming memorandum opinion dated February 10, 1941; *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014; *Albert E. Smith*, 39 B. T. A. 80; *Edith B. Bass*, 45 B. T. A. 1117.

We are not unmindful of the recent decision of the United States Circuit Court of Appeals for the Ninth Circuit in *Sprouse* v. *Commissioner*, 122 Fed. (2d) 973, reversing *John M. Keister*, 42 B. T. A. 484, but with all deference we adhere to our view as expressed in the *Kelly Trust*, *Smith*, *Keister*, and *Bass* cases and affirmed in the *Strassburger* case.

Petitioners' second contention is a corollary to the first and based on the premise that the Revenue Act of 1936 does not apply retroactively to January 1, 1936. The petitioners contend that because of the restrictive character of the language used in the act it is effective only on June 22, 1936, and thereafter. They quote section 1, which reads: "The provisions of this title shall apply only to taxable years beginning after December 31, 1935", and section 1003, which reads: "Except as otherwise provided, this Act shall take effect upon its enactment." They thereupon contend that section 1 limits the applicability of the act by excluding a taxable year beginning before December 31, 1935, and ending after the enactment of the act. As to this question generally, we refer to *Winterbottom Book Cloth Co., Ltd.*, 43 B. T. A. 572, where we said: "Albeit the act [1936] was not approved until June 22, 1936, there is nothing unusual in the fact that the provisions of the act and its taxing scope dated back to the beginning of the year 1936."

Moreover, section 115 (a) (2) and section 115 (f) (1) of the Revenue Act of 1936,[2] peculiarly applicable to the cases at bar, clearly contem-

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

\*          \*          \*          \*          \*          \*          \*

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

plate that all dividends declared and paid during the year 1936 shall be subject to the provisions of the 1936 Act and thus do "otherwise provide" that the applicable date is not June 22, 1936, but January 1, 1936.

The third contention of the petitioners is that although Congress has the power to enact retroactive provisions in income tax legislation, the circumstances of the present case render the imposition of the tax so arbitrary and oppressive as to be a denial of due process of law. They argue that, through their controlled directors, they would not have declared the dividend if they had suspected its taxability. They point with particular emphasis to the high rate of tax to be paid by one petitioner. This argument, which might be made in almost any instance involving the retroactive effect of a taxing statute, fails to impress us. The dividend was declared on May 20, 1936. At that time the tax status of the petitioners was only a matter of conjecture.

The petitioners cite *Welch* v. *Henry*, 305 U. S. 134, to support their position, but we note in the Court's opinion the following statement:

Property taxes and benefit assessments of real estate, retroactively applied, are not open to the objection successfully urged in the gift cases. * * * Similarly a tax on the receipt of income is not comparable to a gift tax. We can not assume that stockholders would refuse to receive corporate dividends even if they knew that their receipt would later be subjected to a new tax or to the increase of an old one.

It is well established that a taxpayer has no vested right in the existing rates of taxation, exemptions, credits, etc. *Welch* v. *Henry*, *supra*; *United States* v. *Hudson*, 299 U. S. 498; *Milliken* v. *United States*, 283 U. S. 15. In the cases at bar the petitioners are in no better position than the taxpayers who were parties in the cited cases.

The petitioners' fourth point is that, in any event, the stock dividends under consideration did not constitute income under the Sixteenth Amendment to the Constitution. They advance the same argument as that made under the first point and suggest that in the *Kelly Trust*, *Keister*, and *Strassburger* cases the Board erroneously applied the statement of the court in the *Koshland* case that a stockholder receives income when a stock dividend gives him "an interest different from that which his former stock holdings represented." As stated heretofore, we reaffirm the conclusion reached in those cases.

The petitioners' final argument is that even if the stock dividend be held taxable, Progress did not have sufficient earnings and profits accumulated since February 28, 1913, from which to pay, in 1936, all of the stock dividends and the cash dividends paid on the preferred and common stock.

During 1936 Progress paid dividends of $250,000 in its preferred stock and $169,166.67 in cash, or a total of $419,166.67. Its income for the year, available for dividends, was not less than $268,031.26. The amount of its earnings and profits accumulated from March 1, 1913, to January 1, 1936, was at least $292,851.80. Therefore, the aggregate amount of earnings and profits from March 1, 1913, to the end of 1936 available for dividends, was $560,883.06. This sum was ample to cover all distributions made during 1936.

Petitioners' chief contention with respect to this phase of the cases is that all of the losses of the subsidiaries of Progress, aggregating $302,858.14, must be deducted in determining its earnings and profits during the period from March 1, 1913, to January 1, 1934. They claim that the subsidiaries were only "departments" of Progress and were maintained solely to take advantage of the "trade names" borne by those companies.

The obvious answer to this contention is that in making the above computation of earnings and profits accumulated between March 1, 1913, and December 31, 1935, the losses of subsidiaries have been deducted and the earnings and profits to December 31, 1936, are nevertheless sufficient to cover the dividends. It may be added, however, that if an issue were made over the propriety of such deductions, the evidence does not support petitioners' position as to the status of the subsidiaries.

The books of Progress showed definite, determinable sums charged as losses from the operations of the various subsidiaries. They had their own sales and expense accounts, kept separately from the Progress items. Progress, as the parent company, supervised the several operations of its subsidiaries, which had their own individual outlets. In fact, the consolidated return of Progress and its subsidiaries for the year 1924 shows the assets and liabilities of each affiliated corporation. Items such as inventories, accounts receivable, advertising, sample books, etc., owned by the subsidiaries appear thereon. One asset common to all subsidiary companies is an item called "trade name", but that is a possession of those companies individually and not of Progress.

In 1934, when the privilege of filing a consolinated return was withdrawn (except to railroad corporations), the subsidiaries proceeded to declare and pay dividends to Progress. In so far as the record shows, their several operations were carried on precisely as in the preceding years. Their corporate entity was preserved; their corporate identity recognized; and their corporate functions exercised. The petitioners cite various cases holding that when subsidiaries are nothing more than "voiceless departments or instrumentalities of the parent corporation" their separate entities may be disregarded. The

facts in the cases at bar do not bring them within the scope of such decisions. The effect of this conclusion, if applied in the present cases, would be to increase by a large sum the amount of earnings and profits available for distribution in 1936.

<em>Decisions will be entered under Rule 50.</em>