## DREYFUSS v. MANNING, Collector of Internal Revenue.

### No. 1166.

District Court, D. New Jersey.

March 24, 1942.

Bilder, Bilder & Kaufman, of Newark, N. J. (Nathan Bilder, Walter J. Bilder, and Robert M. Bilder, all of Newark, N. J., and Erwin N. Griswold, of Cambridge, Mass., of counsel), for plaintiff.

Charles M. Phillips, U. S. Atty., and Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, and Lester L. Gibson, Sp. Assts. to the Atty. Gen., for defendant.

FAKE, District Judge.

This is a taxpayer's suit in which the plaintiff seeks to recover the sum of $264,-040.24 with interest being the amount paid by him in 1940 on a redetermination of his income tax for the year 1936.

During the year 1936, and for many years prior thereto, the taxpayer was, and had been, the sole owner of all of the capital stock of Essex Trading Corporation. He brought this corporation into existence as a personal holding company for the purposes usually incident to such corporations. In December of 1936, being faced with the provisions of the law relating to taxation of undistributed net income of personal holding companies, he took advice from others and exercised his own ingenuity to accomplish, by what he conceived to be legal means, the avoidance of the payment of the tax contemplated by the law.

He caused the charter of his holding company to be amended, whereby, in addition to the common stock theretofore authorized, it was further authorized to issue preferred stock. By resolution he caused the preferred stock so authorized to be issued to himself as the holder of all the outstanding common stock. He did not report the receipt of the preferred stock as income or otherwise in his income tax return for the year 1936. He took the position then, and takes the same position now, that it was not income. The Commissioner of Internal Revenue has taken the position that it was income and as such, taxable for the year 1936. This resulted in an assessment against the taxpayer aggregating the sum first above mentioned, which as stated, he paid, and now seeks to recover.

In Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 195, 64 L.Ed. 521, 9 A.L.R. 1570, it is said: "We have no doubt of the power or duty of a court to look through the form of the corporation and determine the question of the stockholder's right, in order to ascertain whether he has received income taxable by Congress without apportionment. But, looking through the form, we cannot disregard the essential truth disclosed, ignore the substantial difference between corporation and stockholder, treat the entire organization as unreal, look upon stockholders as part-

ners, when they are not such, treat them as having in equity a right to a partition of the corporate assets, when they have none, and indulge the fiction that they have received and realized a share of the profits of the company which in truth they have neither received nor realized. We must treat the corporation as a substantial entity separate from the stockholder, not only because such is the practical fact but because it is only by recognizing such separateness that any dividend—even one paid in money or property—can be regarded as income of the stockholder." From the letter and spirit of the foregoing quotation, authorization clearly is found to look behind the corporate veil to ascertain what the stockholder's rights really are and ascertain by reference thereto whether he as an individual has received taxable income by virtue of his stock holdings.

■ A study of the briefs and a reading of the cited cases, together with other literature on the subject leads to the view that in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, a rule of law was firmly established to the effect that a stock dividend was not taxable as income because the receipt thereof by the stockholder produced no change in the stockholder's proportionate interest in the net assets of the corporation, and no severance of corporate assets was occasioned thereby. Later in United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 67, 66 L.Ed. 180, the ruling in the Macomber case was not disturbed, but it was emphasized that "The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual", and further, that the stock dividend there under consideration was taxable because it constituted a profit which inured to the stockholder by reason of the fact that two corporations were involved, and there was a severance of assets from one of them passing to the other. In Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756, it was held that an income was disclosed where there had been a dividend of common voting shares issued to the holder of cumulative preferred shares because the stockholder then found himself possessed of an "interest different" from that which he held before. It is noted, however, that in the Koshland case no attempt is made to destroy the reasoning by which the court in the Macomber case arrived at the conclusion

that no different proportionate interest was shown where common stock had been issued as a dividend on common stock. Indeed, when an endeavor is made to ascertain the effect of stock holding on the individual stockholder, no other approach is logical. It must be assumed, therefore, that the reasoning as to the proportionate interest would be applied to the instant case.

■ Looking now to the taxpayer's right as the sole owner of all the stock, both common and preferred, during the entire period involved, no other conclusion can be arrived at than that when he carved out for himself, or caused through corporate action, the issuance to himself of the preferred stock, his proportionate interest in the corporate entity having been 100% when he was the lone common stockholder, remained 100% when he became vested with all the outstanding preferred stock. So far as he was concerned as an individual, whatever interest his common stock formerly carried with it was lessened or diluted by whatever the provisions of the preferred stock took from his rights as the sole common stockholder, and whatever the preferred stock took by way of rights from the common remained unsevered and still resident within the whole as to which he was the sole party in interest. It follows that having passed through the divers formalities and artificialities incident to corporate action, the taxpayer finds himself as an individual, right where he was when he started, still vested with 100% and no more of the proportionate interests in his holding company. To reason to the contrary makes it necessary to arrive at the conclusion that the whole can be greater than the sum of its parts. Even in this advanced age, wherein thought is being tested by science and invention, no such feat has as yet been accomplished.

The preferred stock which the taxpayer received in the instant case was greatly restricted in the rights passing thereunder. It had no voting rights whatever. The question of dividends thereon were dependent upon the Board of Directors which was vested with "absolute discretion" in the matter. It was provided that a dividend of $5.00 per share would be paid thereon before any dividend could be declared on the common stock. Thereafter, the holders of the common stock were entitled to receive $5.00 per share. All further dividends during any year were

 

to be divided equally between the preferred and the common until an additional $2.00 per share had been paid on the preferred. Dividends in excess of these amounts were to be paid exclusively to the holders of the common stock. Dividends on the preferred stock were non-cumulative, and it was callable at any time after January 2, 1940 at $105. per share. On dissolution, the preferred stock was entitled to preference to the extent of its par value. Any balance after distribution to holders of the common stock of an amount equal to that distributed to holders of the preferred stock was to be divided equally between the holders of the preferred and common stock.

In Koshland v. Helvering, supra [298 U.S. 441, 56 S.Ct. 769, 80 L.Ed. 1268, 105 A.L.R. 756], it appears that "where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented he receives income." Certainly it was not the intent there to hold that newly issued shares being different shares from those theretofore held disclosed income, but rather that such different shares as disclose a different interest vested an income in the stockholder. Here again, how can it be said that one owning all the outstanding stock of all classes has anything more or less than the whole? True, in the instant case the preferred stock, as above briefly outlined, sets up some new and different conditions, but as has been said, an analysis shows that whatever there is of value inherent in preferred shares must be deducted from the common, hence, there is no income to the individual taxpayer. Nor is the result changed if it is admitted that the sole control is subject to corporate action, since action by the corporate entity is also subject to the taxpayer's sole control, as is evidenced by reference to the Minute Book of the Essex Holding Corporation. Perhaps corporations aggregate should not be permitted to function as corporations sole or if so authorized dealt with as natural persons. Action toward this end is beyond the scope of this case and falls within the legislative field or in the sphere of quo warranto.

In Strassburger v. Commissioner, 2 Cir., 124 F.2d 315, 317, the majority opinion is in direct conflict with the result arrived at here, but it should be noted that the opinion concedes that "the question is not free from doubt." Judge Chase, in dissenting, says: "But surely the case just mentioned [the

Koshland case] must rest upon firmer ground than a change in the kind of shares of stock a stockholder has as the result of a dividend of stock on stock. There must also be a change in his proportionate interest in the corporation's net assets in order to have what is known as a 'realization' of income." With this dissent I find myself in full accord for the reasons above stated.

All the facts in this case were stipulated except the facts bearing upon the value of the preferred stock, and having arrived at the conclusion that no income was involved, it is not necessary further to explore that subject. The facts are found as set forth in the stipulation.

Judgment will be entered in favor of the plaintiff and against the defendant in conformity with the relief sought in his complaint.