CHARLES M. COOKE, LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104386. Promulgated June 17, 1943.

*Heaton L. Wrenn, Esq.*, for the petitioner.
*Arthur Murray, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The respondent has determined a deficiency in the petitioner's income tax of $961.81 and a deficiency in its personal holding company surtax of $16,783.53 for the year 1937.

The issues presented by the pleadings are (1) whether the respondent erred in not allowing a deduction of $5,940 representing unemployment relief taxes levied by the Territory of Hawaii upon dividends paid by the petitioner during 1937; and (2) whether the respondent erred in determining that the petitioner realized taxable income by virtue of its receipt of certain rights to purchase at a stated price preferred stock in a corporation in which petitioner held common stock. At the hearing the petitioner abandoned issue (1), leaving for determination only issue (2).

The proceeding was submitted on a stipulation of facts and certain documents which were placed in evidence. The facts are found as stipulated and as shown by the said documents.

The petitioner is an Hawaiian corporation, and filed its income and excess profits tax return and its return of personal holding company tax with the collector of internal revenue for the District of Hawaii.

Immediately prior to August 9, 1937, the Hawaiian Electric Co., Ltd., sometimes hereinafter referred to as Electric, had an authorized capital of $7,000,000, divided into 350,000 shares of common stock of a par value of $20 each. Of the said shares, 250,000 were issued and outstanding and 100,000 were unissued. The entire outstanding stock was of the same class, each share having preferences, voting powers and all other rights the same as every other share. At a meeting held on August 9, 1937, the stockholders of Electric voted to increase its authorized capital stock from $7,000,000 to $8,000,000, the increase of $1,000,000 to consist of 50,000 shares of series A preferred stock of a par value of $20 a share, and authorized the board of directors to issue the whole of the said 50,000 shares by offering them for subscription pro rata and at $20 per share to the holders of record of the corporation's common stock at the close of business at a date to be determined by the board of directors. The increase in the authorized capital stock became effective August 17, 1937. The shares of series A preferred stock were entitled to a cumulative preferential dividend at the rate of 6 percent per annum upon the par value thereof, payable quarterly, and upon liquidation the holders thereof were entitled to receive the par value of their stock, together with cumulated dividends, before any distribution should be made to the holders of the common stock. The preferred stock was not convertible into any other shares or securities of Electric and was not entitled to any voting rights or privileges except (a) in case the corporation be in default in the payment of four quarterly dividends on the stock, the holders of preferred stock would be entitled

to elect a majority of the members of the board of directors, and (b) the corporation could not issue evidences of indebtedness in excess of one-half of the total par value of its outstanding capital stock, with rights prior to the preferred stock, without the affirmative vote of a majority of the preferred stock. The preferred stock, at the option of the corporation, was redeemable in whole or in part on any dividend payment date at par plus all unpaid dividends.

At a meeting held on September 3, 1937, the directors of Electric declared a stock dividend of 100,000 shares of the corporation's authorized common stock, payable on October 20, 1937, out of the surplus of the corporation pro rata to stockholders of record as of the close of business on October 15, 1937. Said stock dividend was based on the corporation's then outstanding common stock of 250,000 shares. At the same meeting the directors adopted a resolution providing that the 50,000 shares of series A preferred stock be offered for subscription pro rata to the holders of record at the close of business on October 15, 1937, of the 250,000 shares of common stock then outstanding. The resolution provided that transferable warrants evidencing subscription rights be issued as of October 20, 1937, and that each warrant should entitle the holder thereof, until the close of business on December 20, 1937, to purchase the number of full shares of series A preferred stock specified on the face of such warrant at the price of $20 per share. Subsequently the date of issuance of such warrants was changed to October 27, 1937, and the period for the exercise thereof was changed to December 27, 1937.

By reason of its ownership of 99,000 shares of common stock in Electric at the close of business on October 15, 1937, the petitioner, on October 27, 1937, received 99,000 transferable rights entitling the holder to purchase 19,800 shares of series A preferred stock in Electric at $20 per share. The fair market value of the said rights on the date of their receipt by the petitioner was 36 cents per right, or an aggregate fair market value of $35,640. The petitioner exercised the rights on December 20, 1937, by subscribing to 19,800 shares of series A preferred stock in Electric, at a total subscription price of $396,000, the full amount of which was paid to Electric on or prior to that date.

The number of rights to shares of series A preferred stock in Electric issued to each holder of common stock was in direct proportion to the number of shares of stock held by such stockholders at the close of business on October 15, 1937. Between October 27 and December 27, 1937, numerous transfers of the said rights were made. A number of the rights were not exercised by the holders thereof and, as provided in the applicable resolutions, the shares of series A preferred stock to which these unexercised rights pertained were sold at public auction by Electric and the proceeds of the said shares in excess of $20 per

share after deducting expenses of sale were distributed pro rata to the holders of the unexercised rights. By reason of the above mentioned transfers of rights to subscribe and the failure of the holders to exercise their rights, shares of series A preferred stock were issued to persons not holders of the common stock of Electric at the close of business on October 15, 1937, and a number of shares were issued to holders of the common stock of record at the close of business on October 15, 1937, other than in proportion to their holdings of the common stock on that date.

At the close of business on October 15, 1937, Electric's undistributed net earnings accumulated since March 1, 1913, exceeded $500,000 after deducting therefrom the amount of the above mentioned common stock dividend. Electric did not transfer or distribute any cash or other property in connection with the authorization or issuance of rights to subscribe to its series A preferred stock or by virtue of the exercise of the said rights by the holders thereof except the expenses incurred incident to the issuance of the rights and the issuance of the stock. No entry was made on its records as a charge against current earnings or against accumulated earnings, whether earned before or after March 1, 1913, by reason of the authorization or issuance of the said rights or by virtue of the exercise of the said rights by the holders thereof except the expenses incurred incident to the issuance of the rights and the issuance of the stock. All sums received by Electric as a result of the exercise of the rights by the holders thereof were credited by it to its capital stock account.

In the notice of deficiency the following appears in explanation of respondent's determination in respect of the rights to purchase the preferred stock:

* * * At the time you exercised these rights on or about October 27, 1937, such rights possessed a fair market value of $.50 per right or a total fair market value of $49,500. The fair market value of those rights, totaling $49,500 has been included in your taxable income under section 115 (f) (1) of the Revenue Act of 1936 as income within the meaning of the Sixteenth Amendment of the Constitution.

As already shown, the parties have stipulated a fair market value of 36 cents per right on the date of receipt, and there is no claim or contention by either party that the value stipulated is not to be accepted for all purposes in disposing of this case.

Section 115 (f) (1) of the Revenue Act of 1936 deals with distributions by corporations and provides that "A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution." Under section 115 (a) of the statute, "any distribution made by a corporation to its shareholders,

whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913," constitutes a taxable dividend, and the amount of such accumulated earnings of Electric was, according to the stipulation of the parties, more than ample to cover a distribution equal in amount to the stipulated value of the rights here under consideration. The single question to be determined then is whether the said rights issued and exercised constituted income to the petitioner "within the meaning of the Sixteenth Amendment to the Constitution."

The case of *Helen Whitney Gibson*, 44 B. T. A. 950, is directly in point and is authority for the proposition that the receipt by a holder of common stock of a corporation, there being only one class of stock outstanding, of rights to purchase preferred stock of the corporation at a price less than its value, constitutes the receipt of a taxable dividend. This case was affirmed, 133 Fed. (2d) 308, by the United States Circuit Court of Appeals for the Second Circuit on February 10, 1943, on authority of the former decision by that court in *Choate* v. *Commissioner*, 129 Fed. (2d) 684. It is true that the court in the *Choate* case did say that the issuance of the rights alone did not effect any distribution by the corporation and that the rights must also be exercised, but that difference between the views of that court and the Board is of no moment here, since the rights here in question were in fact exercised. In each instance, however, the ultimate and final conclusion was based on the proposition that, had a dividend payable in shares similar to those purchasable under the rights here issued been declared and paid, such a stock dividend would have been taxable to the holders of the common stock on which the dividend was declared. To support that proposition, both the Board and the court relied on *Koshland* v. *Helvering*, 298 U. S. 441. The Circuit Court of Appeals also relied on its former decision in *Strassburger* v. *Commissioner*, 124 Fed. (2d) 315, wherein Strassburger, owning common stock of a corporation, the only class of stock outstanding, received a dividend of preferred stock thereon. The Supreme Court, citing *Helvering* v. *Griffiths*, 318 U. S. 371, has since reversed *Strassburger* v. *Commissioner*, 318 U. S. 604, holding that the distribution of preferred stock by a corporation on its common stock, the common stock being the only stock outstanding, was not the distribution of a taxable dividend. Distinguishing *Koshland* v. *Helvering*, it was said that "to render the dividend taxable as income, there must be a change brought about by the issue of shares as a dividend whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest." Since under *Strassburger* v. *Commissioner* and *Helvering* v. *Griffiths* the preferred stock in the instant case, if it had been distributed as a stock dividend on the common stock of Electric, would not have been a

taxable dividend, we think it follows that any portion of the value of such stock, the distribution of which may have been effected through the issuance of stock rights and the exercise thereof, likewise may not be held to be a distribution of a taxable dividend. It is true that some of the holders of the common stock of Electric did not exercise their rights to purchase the preferred shares and that the preferred shares allocable to the unexercised rights were sold at auction and without regard to the holding of common stock and by reason of such sales of preferred stock some change of the interests of the common stockholders in the corporation may have resulted; but, if so, the change was not brought about by the issuance and exercise of the rights but by the sale of preferred shares without regard to the rights. The contention of the petitioner that it did not receive a taxable dividend is accordingly sustained. Due, however, to the abandonment of issue (1), a recomputation of the deficiency is required.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Opper, *J.*, dissents.