*Decision will be entered under Rule 50.*

EDWIN L. WIEGAND, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10836, 10837, 10838, 10839, 10840, 10841, 10842, 10843, 10844, 11123. Promulgated January 31, 1950.

*Harry Friedman, Esq., S. R. Rubin, Esq.,* and *Michael D. Bachrach, C. P. A.,* for the petitioners.

*A. W. Dickinson, Esq.,* for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Ernest N. Calhoun; Cynthia S. Calhoun; A. P. Wiegand; Millard M. Greer and Mary T. Greer, Husband and Wife; Norbert F. Stanny and The Union National Bank of Pittsburgh, Pa., co-trustees, E. L. Wiegand Trust No. 1; Norbert F. Stanny and The Union National Bank of Pittsburgh, Pa., co-trustees, E. L. Wiegand Trust No. 2; Norbert F. Stanny and The Union National Bank of Pittsburgh, Pa., co-trustees, E. L. Wiegand Trust No. 3; Norbert F. Stanny and The Union National Bank of Pittsburgh, Pa., co-trustees, E. L. Wiegand Trust No. 4; Fred I. Tourtelot and Mary H. Tourtelot, Husband and Wife.

OPINION.

TURNER, *Judge*: The first question for determination is whether the distributions made by the corporation on June 20, 1940, of 2,000 shares of its class A stock to holders of that class of stock and 12,000 shares of its class B stock to holders of that class of stock constituted distributions taxable as dividends under the Internal Revenue Code.[1]

While section 115 (f) of the code excludes from the definition of "dividend" distributions made by corporations in their stock where

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

    *        *        *        *        *        *

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholdes within the meaning of the Sixteenth Amendment to the Constitution.

such distributions do not constitute income to the stockholders within the meaning of the Sixteenth Amendment, it does not provide any rule or test for determining whether a given distribution does or does not constitute income within the meaning of the amendment. Relying on certain decisions of the Supreme Court and of this Court, the petitioners contend that the well established and controlling test for making such a determination is whether the distribution did or did not materially change or alter the preexisting proportionate interest of the stockholders in the net assets of the corporation as such assets existed on the distribution date; that where no such change in proportionate interest in net assets occurred, no income resulted; and that where such a change did occur, income resulted. The respondent contends that the real and proper test is not solely as to whether the stock distribution effected a change in the proportionate interest of the stockholders in the net assets of the corporation at the time of distribution, but also whether it effected a change in their other interests in the corporation as a going concern, such as their interests in control, in dividends, and in ultimate liquidation. His position is that a stock distribution which effects a change in the proportional interests of the stockholders with respect to any of the foregoing, results in income to the recipients and accordingly is taxable to them as a dividend.

It is well settled, we think, that where a corporation has only one class of stock outstanding and it distributes a dividend on that stock of stock of the same class, the distribution does not constitute income within the meaning of the Sixteenth Amendment. *Eisner* v. *Macomber*, 252 U. S. 189; *Helvering* v. *Griffiths*, 318 U. S. 371. On the other hand, where a corporation has two or more classes of stock outstanding and a dividend is paid on one class of stock in the form of shares of the other class, it is equally well settled that such a dividend is income within the meaning of the Sixteenth Amendment. *Koshland* v. *Helvering*, 298 U. S. 441; *Helvering* v. *Gowran*, 302 U. S. 238; and *Helvering* v. *Pfeiffer*, 302 U. S. 247. When the decisions were at that stage, *Helvering* v. *Sprouse* and *Strassburger* v. *Commissioner* were decided by the Supreme Court at 318 U. S. 604. Both of these cases originated in this Court, which was then known as the Board of Tax Appeals. In the *Sprouse* case, the authorized capital stock was of three classes: Nonvoting 7 per cent cumulative preferred, redeemable at par, plus accrued dividends; voting common stock; and nonvoting common stock. All shares had a par value of $100 per share. The common stock of both classes was to share equally in dividends, after dividend payments on the preferred. On liquidation or dissolution, all three classes of stock was to share equally in the assets of the corporation. At a time when the corporation had no preferred stock

outstanding, but only common stock, consisting of voting common stock of $397,471.25 par value and nonvoting common stock of $819,333.06, a 10 per cent stock dividend was paid in nonvoting common on voting and nonvoting common stock alike. This Court was of the opinion that the *Koshland* case was controlling as to the dividend of nonvoting common paid on the voting common stock and that the taxpayer realized income to that extent, since the nonvoting stock received on the voting stock was not of "precisely the same character" as the stock previously held, and accordingly represented an interest different from that which the stock previously held represented. In the Circuit Court of Appeals for the Ninth Circuit we were reversed, the court being of the view that we had misconstrued the decisions of the Supreme Court. The court said that:

* * * to determine whether the stockholders had received "income" actually and really is to determine whether the corporate earnings have been divided, segregated or set apart for the stockholders. Thus if the corporation has only one class of stock, the stock dividend is not a representation of a division or segregation of earnings, because the distributed stock gives the stockholders nothing which they did not already have. The proportionate interests are the same, the value of the original stock decreases to the extent of the value of the distributed stock, and the net result is that the stockholder's shares have been split into two interests. * * *

Where the corporation has more than one class of stock outstanding, and distributes a stock dividend to one class only, then the proportionate interests in the corporation are changed, because the class of stockholders who receive the dividend then have a greater interest in the assets of the corporation than those who did not receive the stock dividend. There being a change in the proportionate interests, the recipients of the stock dividend have derived income. * * *

The court then remanded the case, with instructions to find whether the proportionate interests of the stockholders were changed by reason of payment of the nonvoting common stock dividend on the voting common stock. In the Supreme Court, the argument of the taxpayer was that the distribution of the dividend "in nowise disturbed the relationship previously existing amongst all the stockholders or that previously existing between the respondent [taxpayer] and the corporation." On that argument, the Supreme Court affirmed the action of the Circuit Court of Appeals below.

In the *Strassburger* case, the taxpayer owned all of the stock of a corporation, which consisted of common stock only. The corporate charter was amended to authorize 500 shares of 7 per cent nonvoting cumulative preferred stock, with a par value of $100 per share. A dividend of 50 shares of the preferred stock was distributed on the common stock. This Court held that the dividend constituted income. In that view, we were affirmed by the Circuit Court of Appeals for the Second Circuit, the Circuit Court holding that, even though the situation presented was different from that presented in the

*Koshland* v. *Helvering, supra; Helvering* v. *Gowran, supra;* and arrangement of the corporate capitalization and changed the character of corporate ownership; that, since the preferred stock had the prior right to dividends and a preference as to assets on liquidation, both of which rights could thereafter be disposed of without affecting the voting control in the common stock, the holder of the common stock had received an interest different from that previously held; that the distribution, being one of property rights varying in character from those previously owned, the dividend in preferred shares constituted income; and that the opinion of the Supreme Court in the *Koshland* case was controlling. Reversing this Court and the Circuit Court of Appeals, the Supreme Court held that the distribution brought about no change in the ownership of the corporation. There being only one class of stock outstanding, and with all shares participating equally in the distribution, there was no change in the proportionate interests of such shares. All of the stock being held by Strassburger, he continued to own the entire proprietary interest, having exactly the same interest in the net value of the corporation after the distribution as before.

We have found no case wherein the ultimate holding has been that a stock dividend constituted income, within the meaning of the Sixteenth Amendment, in the case of any corporation which had only one class of stock outstanding at the time of the dividend distribution. It is true that the *Sprouse* case was remanded for further consideration, but even in that case, where at the time of the payment of the dividend both voting and nonvoting common stock was outstanding, the dividend of nonvoting common on voting common was in issue, the Supreme Court seemingly accepted the test of the lower court as reflected in the taxpayer's contention that there was no income if the nonvoting common dividend on voting common in no way disturbed the relationship previously existing amongst all stockholders or that previously existing between the stockholders and the corporation, to the end that the proportional interests after the distribution were essentially the same as before the distribution. In other words, for the purposes of the court's decision, the nonvoting common and voting common were treated as essentially the same.

On the other hand, the Supreme Court has concluded, or given support to the conclusion, that, where at the time of the dividend distribution there were two or more classes of stock outstanding and a stock dividend on one class was paid in stock of the other class, the dividend is income within the meaning of the Sixteenth Amendment. *Koshland* v. *Helvering, supra; Helvering* v. *Gowran, supra;* and *Helvering* v. *Pfeiffer, supra.* It also seems to us equally clear, from an examination of the cases, that the reasoning of the Supreme Court

in this latter group of cases is that after considering the rights of the holders of the stock of one class, as related to the holders of the stock of the other class, both with respect to dividends and interest in the net value of the corporation, the issuance of such a stock dividend has effected a change in the stock or proprietary interests of the holders of the corporate stock and accordingly the dividend is income. We have not found a case such as we have here, where, with two classes of stock outstanding, a dividend was declared and paid on each class of stock in stock of the identical class. If we have read the opinions of the Supreme Court aright, however, the answer is to be found in a determination of whether the payment of the dividend, in the instant case, of A stock on A stock and B stock on B stock did effect such a change in the stock and proprietary interests amongst all of the stockholders, taking into account each class of stock and the relationship between them before and after the distribution, or whether there was any change of relationship between the holders of the stock and the corporation which might be indicative of a change in their interests in the net value of the corporation.

In the instant case, the class A stock was a voting, participating preferred stock having (1) all the voting rights, (2) the right to a cumulative annual dividend of $6 per share with the additional right to participate equally per share with the class B shares in any dividends for the current year that were paid after payment of the $6 dividend on the class A shares and a $2 dividend on the class B shares, and (3) the right in liquidation to a preferential payment of $100 per share and accrued dividends, with the additional right, after the payment of $5 per share on the class B shares, to participate in any remaining assets in the proportion which the total stated value of the class A shares bears to the total stated value of the class A and class B shares.

By the distribution of class A stock in the instant case the corporation firmly obligated itself to pay annually on that class of stock a dividend totaling $36,000, whereas its prior obligation in this respect was only $24,000. In addition, it obligated itself, on liquidation, to pay on that stock $600,000, whereas the prior obligation was only $400,000. Because of the rights attaching to the shares of the respective classes of stock, the corporation did not, and could not, assume additional corresponding obligations with respect to its class B stock. Since the class A shares already had all the voting rights, no additional voting rights were acquired by reason of the distribution of the class A shares. However, they did acquire fixed rights to definite dividends and preferential payments on liquidation in addition to the rights of that character previously held. These acquisitions by the class A shares caused the proportionate interest formerly represented by such

shares to be materially different from what it was before the distribution. Cf. *Helms Bakeries*, 46 B. T. A. 308.

The class B shares had no voting rights and accordingly the distribution of shares of that class of stock gave them no additional rights in that respect. The class B shares were not entitled to any definite or fixed annual dividend, as in the case of the class A shares. The class B shares were entitled to dividends only after payment of the dividend on the class A shares. The class B shares were then entitled to no fixed amount, except that they were entitled to a dividend of $2 a share in the current year before the class A shares became entitled to participate beyond their fixed dividend of $6 per share. While the distribution of 2,000 shares of class A stock moved the class B shares $12,000 away from the point in dividends where they would be entitled to the $2 a share dividend, the distribution of the 12,000 class B shares moved the class A shares $24,000 away from the point where they would be entitled to an additional participation in dividends, share and share alike, with the class B shares. The distribution of the 12,000 shares of class B not only enlarged by $24,000 the participation of that class in the $2 dividend, but also enlarged the participation of that class in dividends after payment of $6 per share on the class A and $2 a share on the class B. In other words, by the distribution of 2,000 shares of class A stock, that class became entitled to share in an additional participation to the extent of 2,000 shares, while by the distribution of 12,000 class B shares that class became entitled to share in an additional participation to the extent of 12,000 shares, the shares of each class taking equally per share in such distribution.

The class B shares were not entitled to any definite or fixed amount in liquidation, as were the class A shares. The class B shares were entitled to payment on liquidation only after a payment of $100 per share, plus accumulated dividends, had been made on the class A shares. Then, if the remaining assets should be sufficient, the class B shares would be entitled to a payment of $5 per share before the class A shares would be entitled to participate beyond their fixed payment of $100 per share. While the distribution of 2,000 shares of class A stock moved the class B shares $200,000 away from the point in corporate assets where the latter would be entitled to the $5 per share payment in liquidation, the distribution of the 12,000 shares of class B stock moved the class A shares $60,000 away from the point where they would be entitled to an additional participation in liquidation payments. The additional participation in liquidation payments after payment of $100 per share on the class A shares and $5 per share on the class B shares would not be on the basis of share and share alike, as in the case of dividends, but on the basis of classes of stock, each class taking that proportion of the remaining assets which the total of the stated value of the outstanding shares of such class bore to the

total stated value of both classes of stock outstanding at the time of liquidation.

From the foregoing, it is clear that while the distribution of the 2,000 shares of class A stock gave that class added fixed preferences in both dividends and in payments on liquidation, the distribution of the 12,000 shares of class B stock gave that class increased rights to dividends and in payments on liquidation before there could be any additional participation by the two classes in dividends and on liquidation. Thus a portion of the interest previously inhering in the class B shares shifted to the class A shares and a portion of the interest formerly in the class A shares shifted to the class B shares. Obviously such shifting effected a change in the interests formerly represented by the two classes. Since we have concluded above that such changes were sufficient to make the proportionate interest represented by the class A shares essentially different after the distribution from what it was before, we think a like conclusion is applicable in the case of the interest represented by the class B shares.

Prior to the distributions the corporation had outstanding 4,000 shares of class A stock and 24,000 shares of class B stock, or stock in a ratio of one class A share to six class B shares. The distributions were made in that ratio, thus continuing the same ratio after as before the distributions. From that situation, the petitioners contend that the distributions on the two classes of shares were declared as a part of a single transaction; that the effect of the distributions may not be considered as to each class separately, but must be viewed in terms of the total effect of the distributions on each stockholder in the light of the stock which he already owned; that accordingly no taxable distribution was received by those who held class A shares and class B shares in the above stated ratio; and that in the case of those who held both classes of stock, but not in that ratio, the taxable distribution was limited to that portion of the distributions allocable to the shares held in excess of such ratio.

It is true that the corporation's directors employed only one resolution in authorizing and directing the distribution of the class A shares and the class B shares. And we do not question the accuracy of the claim that there was no thought or intention of declaring and distributing the dividend on either class A or class B stock, and not on the other. That does not negative the fact, however, that two dividends were declared and paid, one on the class A shares and the other on the class B. The two dividends having been declared and paid, the ultimate effect produced and the results accomplished were no different from what they would have been if separate resolutions had been employed and their adoption had occurred at different times during the taxable year. In the *Sprouse* case the corporation, in February,

1936, distributed to the taxpayer nonvoting common stock as a dividend on voting common and in December, 1936, distributed to him nonvoting 7 per cent preferred stock on voting common. The Board of Tax Appeals considered the dividends separately. In considering, on appeal, only the Board's holding as to the taxability of the February, 1936, dividend, neither the Circuit Court nor the Supreme Court questioned the Board's action in considering the distributions separately. Since, in fact, here two separate dividends were declared and paid, effect must be given to them not because made at the same time or separately, but on the basis of the result of each. We find no reason for discriminating between holders of only one class of stock and those who held both classes of stock by holding, as some of the petitioners ask, that those who held stock in the ratio of one class A share to six class B shares received no taxable distribution and those who held both classes, but not in that ratio, received a taxable distribution only to the extent of the portion of the distribution that was allocable to the shares held in excess of that ratio. The determination of whether a given stock dividend does, or does not, constitute taxable income must rest on some other basis than the mere fact that the recipient fortuitously did or did not hold stock of another class on which the distributing corporation also paid a stock dividend.

Since the shifting of interests between the two classes of stock made the proportionate interests represented by the respective classes of stock materially different after payment of the dividends from what they were before, it follows that the proportionate interests of the holders of shares of each class of stock were materially different after the dividends from what they were before. Accordingly, we hold that stock dividends received by the petitioners were, to the extent of the fair market value of the shares received, income, under the Sixteenth Amendment and under section 115, *supra*, of the code.

From a consideration of all of the evidence, oral and otherwise, bearing on the fair market value of the class A and class B shares on the date of the distribution, we have found as a fact that such value was $120 per share for the class A and $14.50 for the class B.

There remains for determination the issue as to the statute of limitations. Since the deficiency notices to the petitioners, except Fred I. Tourtelot and Mary H. Tourtelot, were not mailed until March 8, 1946, the respondent relies on the provisions of section 275 (c) of the code[2] to bring the issuance of the notices within the permissible stat-

[2] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
\* \* \* \* \* \* \*
(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

utory period. As to Fred I. Tourtelot and Mary H. Tourtelot, to whom the deficiency notice was mailed on May 3, 1946, the respondent relies on the consent executed by them, extending to June 30, 1947, the time for the assessment of their 1940 income tax.

The petitioners take the position that section 275 (c), *supra*, was intended to apply only in situations involving bad faith or some other improper element and that it has no application here, since they acted in complete good faith in a doubtful matter. We have heretofore considered the section and its legislative history and have concluded that where there is an understatement of gross income of the prescribed amount, the application of the provisions of the section is not avoided because of honest or innocent mistake of the taxpayer. *Estate of C. P. Hale*, 1 T. C. 121; *American Liberty Oil Co.*, 1 T. C. 386.

The fair market value of the shares of class A stock and class B stock heretofore held taxable, were as follows with respect to the indicated petitioners.

| Petitioner | Class A shares | Class B shares | Total |
|---|---|---|---|
| Edwin L. Wiegand | $185,040.00 | $78,546.50 | $263,586.50 |
| A. P. Wiegand | 11,040.00 | 8,004.00 | 19,044.00 |
| Ernest N. Calhoun | 27,360.00 | | 27,360.00 |
| Cynthia S. Calhoun | 2,160.00 | 19,009.50 | 21,169.50 |
| Millard M. Greer | 9,600.00 | 6,960.00 | 16,560.00 |
| E. L. Wiegand Trust No. 1 | | 14,500.00 | 14,500.00 |
| E. L. Wiegand Trust No. 2 | | 14,500.00 | 14,500.00 |
| E. L. Wiegand Trust No. 3 | | 14,500.00 | 14,500.00 |
| E. L. Wiegand Trust No. 4 | | 14,500.00 | 14,500.00 |

Since the total amount was, in the instance of each of the foregoing petitioners, in excess of 25 per cent of the amount of gross income stated in their respective returns, and since in each instance the deficiency notice was sent within five years after the return was filed, we hold that the conditions specified in section 275 (c), *supra*, exist and that the period of limitations provided therein has not expired.

Since the deficiency notice was mailed to Fred I. Tourtelot and Mary H. Tourtelot within the time for assessment as extended by the consent, the period of limitations for making assessment against them has not expired.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

KERN, *J.*, dissenting: I dissent from that part of the majority opinion having to do with the taxability of those stockholders who held only class B shares. The reasons for my dissent upon this issue have been ably stated in the dissenting opinion of Judge Opper.

VAN FOSSAN, *J.*, dissenting: The facts show, and the respondent concedes, that the stock distribution involved did not affect the voting power of any of the shareholders and that had there been a liquidation immediately after the distribution each shareholder would have received the same amount he would have received had there been a liquidation immediately before the distribution. Thus the distribution involved effected no immediate change in the proportionate interests of the shareholders in the net assets or value of the corporation.

The respondent contends that a shift in the proportionate interests of shareholders in future dividends or distributions in liquidation renders a stock dividend taxable.

Similar contentions were made by the Commissioner in *Sprouse* v. *Commissioner* (CCA–9), 122 Fed. (2d) 973, involving a 1936 distribution of a 10 per cent stock dividend in nonvoting common stock on outstanding voting and nonvoting common stock, and in *Strassburger* v. *Commissioner* (CCA–2), 124 Fed. (2d) 315, involving a distribution in nonvoting cumulative preferred stock on common stock, which was the only stock outstanding and all owned by one person.

The Circuit Court of Appeals in the *Strassburger* case held the stock dividend involved to be taxable income, stating, in part, that "the rearrangement of corporate capitalization so that the petitioner held preferred as well as common stock did change the character of his corporate ownership" since the "preferred stock had the prior right to dividends and a preference on liquidation of the corporation," which "rights could be disposed of without affecting the voting control residing in the common stock." The Court in the *Sprouse* case stated in its opinion that the test proposed by the Commissioner to determine whether the recipient of a stock dividend derived taxable income based upon "differences in such characteristics as preference in interest in the assets and in dividends, and the right to vote" resulted from a misconception of the decisions of the Supreme Court and held that where both nonvoting and voting stocks participated in a stock dividend, the shareholder derived no taxable income if the dividend was distributed in proportion to the value of classes of stock outstanding. In other words, the test to be applied in determining whether a recipient of a stock dividend derived taxable income is whether the distribution effected a change in the proportionate interests of the shareholders in the net value of the corporation.

The *Strassburger* and *Sprouse* cases were considered by the Supreme Court at the same time and disposed of in one opinion. It reversed the *Strassburger* case, stating that the "distribution brought about no change whatever in his interest in the corporation. Both before and after the event he owned exactly the same interest in the net value

of the corporation as before." The Court affirmed the *Sprouse* case, wherein the Appellate Court had rejected contentions of the Commissioner similar to those made herein.

It is clearly implicit in the above decisions that the question of taxability in the instant type of cases is to be decided by the facts obtaining at the date of the distribution of dividends, i. e., on the basis of facts as they were, not on facts hypothetically postulated as of some future date. See *Helvering* v. *Griffiths*, 318 U. S. 371.

In my opinion, the stock dividend involved did not constitute taxable income to the recipients thereof, since the distribution thereof brought about no change in the proportionate interests of the stockholders in the "net value of the corporation." The new certificates merely increased the number of shares of each class outstanding, with consequent dilution of the value of each share.

I respectfully note my dissent.

---

OPPER, *J.*, dissenting in part: In its conclusion that to some extent a taxable stock dividend resulted from the combined distribution on class A and class B shares, the present opinion seems to me correct and not subject to serious question. From the holding that a taxable dividend was received by the stockholders who held disproportionally large amounts of class A stock (specifically Edwin L. Wiegand and Ernest N. Calhoun), I consequently do not dissent.

My first difficulty comes with respect to those shareholders (A. P. Wiegand, M. M. Greer, and Fred I. Tourtelot), who held class A and class B stock in the proportions of the total issue, so that both before and after the dividend their proportional interest in relation to the other stockholders and to the corporation was unchanged; it being apparently accepted by all parties and by this Court that the "proportional interest" test is the one to be applied. On this aspect of the controversy, the decisive issue appears to be whether the whole body of stockholders taken as a single class is to be considered, or whether the individual situation of each taxpayer is what governs.

But, while it would be idle to suggest that there is any controlling authority on this point to support either view, and while the question is involved and difficult, the practical necessities of levying a tax on an individual seem to me to require that his liability should be gauged not by that of the group to which he belongs, but by a consideration solely of his own situation. As long ago as *United States* v. *Phellis*, 257 U. S. 156 (1921), the Supreme Court expressed the view that (p. 174) :

* * * it would be erroneous, we think, to test the question whether an individual stockholder derived income in the true and substantial sense

through receiving a part in the distribution of the new shares, by regarding alone the general effect of the reorganization upon the aggregate body of stockholders. The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual. * * *

Since I believe that to be still the sound approach; since these two dividends were obviously a part of a single transaction, proposed at the same directors' meeting, approved at the same stockholders' meeting, declared in the same sentence of the same resolution, and paid on the same day, so that undoubtedly "the assent of the stockholders was based upon this as a part of the plan," *United States* v. *Phellis, supra;* and since the consequence is that as to the individual stockholders specified the effect of this integrated operation was to leave their proportionate interests completely unaffected, I reluctantly disagree with the opinion in so far as it holds that any taxable dividend was received by them.

A different problem is presented by the situation of those stockholders who held only class B shares. Their proportionate interest was, it is true, affected conversely to the situation of the holders of class A stock. But a realistic appraisal of the facts seems to me to show that the benefit of the change in proportionate interests accruing to the class A stockholders was achieved at the expense of the holders of the other shares. Respondent in fact concedes that: "It is also true that the shift in proportionate interests is on the whole prospectively detrimental to B." I would include such a finding in the statement of facts. If that were done, even on the theory on which the case is decided, the determination would be required that the holders of the class B shares, as a class, obtained no benefit from the distribution upon which they should be taxed.

For the reasons stated, I regretfully dissent from the conclusions reached as to all but the disproportionate holders of the class A shares.

BLACK and HARRON, *JJ.*, agree with this dissent.