**TOURTELOT et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10199.**

United States Court of Appeals Seventh Circuit.

May 28, 1951.

Harry Friedman, Washington, D. C., for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Helen Goodner, L. W. Post, Sp. Assts. to the Atty. Gen., for respondent.

Before KERNER, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioners, two stockholders of Edwin L. Wiegand Company owning 2% of its preferred or Class A stock and a like 2% of its Class B stock, seek to reverse the decision of the Tax Court approving the respondent's assessment against them of a deficiency tax for the year 1940 of $1305.50, assessed on the ground that a certain stock dividend declared by the corporation and received by petitioners that year constituted taxable income.

On June 19, 1940, the company had outstanding 4000 shares of Class A stock and 24,000 of Class B. Class A was entitled to cumulative dividends of $6 a share. Class B could receive no dividends until the preferred dividends had been covered, whereupon, if the earnings warranted, B would receive $2 a share. If further divi-

dends were justified, the two classes were to participate in their distribution in equal proportions. All voting power was vested in the A stock. Upon liquidation, Class A was to receive $100 a share. After this had been paid, B shares were to be paid $5 per share. Any surplus remaining after distribution of the two respective sums was to be shared by each of the two classes in the same proportion which the total of each class' stated capital bore to the total stated capital of both classes, that is, 10/13ths for Class A and 3/13ths for Class B.

On June 19, 1940 the Board of Directors adopted a resolution authorizing issuance of 2000 shares of A stock and of 12,000 shares of B stock, "pro rata among the stockholders of record as of June 19, 1940" and providing "that for each share of Class A stock held of record on June 19, 1940, by a stockholder, he is to receive as a stock dividend ½ share of Class A stock, and for each share of Class B stock held of record June 19, 1940, each stockholder is to receive as a stock dividend ½ share of Class B stock". Appropriate provision was made for the transfer of so much of the company's surplus account to the company's capital account as to include in the latter $100 for each share of A stock and $5 for each share of B stock issued. Pursuant to this action, petitioners received additional certificates of Class A stock for 40 shares and for Class B, 240 shares, they having held previously 80 shares of A and 480 shares of B. After issuance of the certificates representing the stock dividends, the proportionate interest of petitioners in the corporate assets was the same as before, that is, 2%, and each of the respective shares received was of exactly the same character as those previously held.

The Tax Court recognized the authoritative effect of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, adhered to in Helvering v. Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843, under which a stock dividend which does not create a change in the shareholder's proportionate interest in the corporation is not taxable; but, relying upon Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268; Helvering v. Gowran, 302 U.S. 238, 58 S. Ct. 154, 82 L.Ed. 224 and Helvering v. Pfeiffer, 302 U.S. 247, 58 S.Ct. 159, 82 L. Ed. 231, held the dividends taxable because of the changes which it conceived the stock dividend effectuated in the status of the two classes of stock. Five judges dissented. The court thought that the changes in rights to dividends and upon dissolution ensuing as a result of the issue of additional stock were sufficient to make of the new stock a security different from that which petitioners had previously held.

True, it is that, instead of 4000 of A shares with an annual cumulative dividend of 6% of $24,000 outstanding prior to the declaration of the stock dividend, there were, after the dividend was declared, 6000 shares with an annual dividend expectancy of $36,000. In other words, after the dividend, before B stockholders could receive any dividend, $36,000, or $12,000 more than previously, had to be provided for A stockholders. Upon dissolution, it is readily seen, B shareholders' right to share in distribution of assets was, after issuance of the additional stock, postponed until not only the 4000 shares of A stock originally issued had been cared for but also until the 2000 shares included in the stock dividend had received their pro rata share.

Among the rights of shareholders in a corporation, possessed of pro rata ownerships of the net assets, is the right to have dividends according to the corporate by-laws and, on liquidation or dissolution of the corporation, corresponding pro rata rights in distribution. The majority of the Tax Court believed that, because the evidence showed that by the stock dividends the rights of the respective classes of shares to dividends and their respective rights on liquidation or dissolution were altered, the stock distributed created in those receiving it a proportionate interest in the corporation and its assets different from that previously held by the same stockholders. It is undisputed that by issuance of the stock dividend, additional rights came into existence in the preferred stockholders as compared to those of holders of B stock.

It seems clear also that the position of the B stockholder was, to the extent that additional priorities passed to A stockholders, that of owner of lesser rights than formerly.

 The petitioners owned 2% of the stock, both A and B, before the dividend was declared. They owned exactly 2% of each thereafter. Their rights as A shareholders were enhanced; their rights as B shareholders were handicapped; but the A stock held, plus its awarded advantages, and the B stock held, less its newly imposed disadvantages, amounted to exactly the same total interest in the corporation as before the dividend was declared. Though petitioners were better off as A stockholders but worse off as B stockholders, the sum total of their rights in all respects was exactly the same before as afterwards. Consequently, we conclude that the Tax Court was not justified in holding that the injury to one stock and the improvement of the other, though each was equal to the other, worked such a change in ownership and in rights in case of corporate dissolution as to justify the court in concluding that as a result of the dividend peitioners had received something in the way of statutory income.

We are not dealing with the rights of B stockholders who owned no A stock; or with the rights of A shareholders who owned no B stock, or with the rights of those who owned both stocks in disproportionate amounts. We are concerned only with stockholders who owned, before adoption of the resolution declaring a stock dividend, 2% of the corporation and thereafter, 2% of the corporation. In the end, the total of 2% interest in the corporation was exactly what it was in the beginning. These facts do not create income; they result in no change in petitioners' property interest in the capital of the corporation. What the situation would be if each petitioner owned only one kind of stock, we are not called upon to determine. Under the decisions of the Supreme Court in the cases cited in the course of this opinion, as we interpret them, we think the Tax Court erred, in so far as these petitioners are concerned, in approving the Commissioner's assessment of the deficiency.

The decision is reversed with directions to the Commissioner to eliminate the deficiency assessment.