WIEGAND et al. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 10226–10234.

United States Court of Appeals Third Circuit.

Argued May 8, 1951.

Reargued Dec. 7, 1951.

Decided Feb. 13, 1952.

Harry Friedman, Washington, D. C., for petitioners.

Loring W. Post, Washington, D.C. Theron Lamar Caudle, Charles Oliphant, Washington, D.C., Asst. Atty. Gen., Ellis N. Slack, Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and STALEY, Circuit Judges.

BIGGS, Chief Judge.

The petitioners comprise all the stockholders of the Wiegand Company, save two (the Tourtelots, whose tax case was decided in their favor, Tourtelot v. Commissioner of Internal Revenue, 7 Cir., 1951, 189 F.2d 167, and they seek a review of a decision of the Tax Court, 14 T.C. 136, which confirmed assessments of deficiencies against them by reason of stock dividends declared by Wiegand Company in June, 1940. The respective interests of the petitioners, their contentions and those of the Commissioner, are so fully set out in the opinions of the Tax Court and of its concurring and dissenting judges that they need not be repeated in detail here.

Under the dividend resolution shares of A and B stock (the only classes of stock) of the Company were issued *pro rata* among the stockholders so that for each share of A stock held a dividend of ½ share of A was allotted and for each share of B, ½ share of B. Appropriate amounts were transferred from the Company's surplus account to its capital account. Prior to the distributions the Company had outstanding 4,000 shares of A and 24,000 shares of B, a ratio of 1 A share to 6 B shares. After the distributions there were outstanding 6,000 shares of A and 36,000 shares of B, or the same ratio. All the voting power was held by the A stock before distribution and remained in the A following the dividend. No change was worked in the qualifications and preferences of the two classes of stock. These are as set out in the margin.[1]

---

1. As to Dividends.—The holders of Class "A" Common Stock shall be entitled, in preference to the holders of Class "B" Common Stock, to dividends out of the surplus or net profits as and when declared by the Board of Directors, at the rate of $6.00 per share per annum, payable at such time as the Board of Directors may determine; such dividends shall be cumulative so that if for any dividend period, dividends at the rate of $6.00 per annum shall not have been paid upon such Class "A" Common Stock, the deficiency shall be fully paid, but without interest, before any dividend shall be paid upon, or set apart for the Class "B" Common Stock.

After the cumulative dividends on the Class "A" Common Stock for all previous years and the current fiscal year shall have been declared and shall have become payable, and a sum sufficient for the payment thereof shall have been set aside from the surplus or net profits, the Board of Directors may then declare dividends on the Class "B" Common Stock. Whenever such dividends for the current year on the Class "B" Common Stock shall total $2.00 per share, any further dividends that might be declared by the Board of Directors during the same year shall be paid equally to both classes of stock, i. e., each share of Class "B" Common Stock receiving the same amount as each share of Class "A" Common Stock.

As to Voting Rights.—The holders of the Class "B" Common Stock shall have no voting power whatsoever; nor shall they be entitled to notice of any meeting of shareholders of the Corporation; the voting power being vested exclusively in the holders of Class "A" Common Stock.

As to Liquidation.—In the event of any liquidation, dissolution, or winding-up of the Corporation, whether voluntary or involuntary, the holders of Class "A" Common Stock issued and outstanding shall be entitled to be paid $100.00 per share, together with an amount equal to all dividends thereon accrued or in arrears, whether or not earned or declared, before any amount shall be paid to the holders of Class "B" Common Stock. The hold-

Some of the stockholders held both A and B stock. Some held only B. One stockholder held only A. The respective holdings both before and after distribution are set out on pages 139–140 of 14 T.C. There is no doubt but that the Company was and is a prosperous and going concern able to meet its dividend requirements or liquidation obligations.

We are of course concerned here with the "proportional interest" doctrine of taxation. It is based on the principle that when the tax-paying stockholder receives a stock dividend which does not alter his legal rights he does not incur the incidence of "income" taxation within the purview of the Sixteenth Amendment.[2] The "proportional interest" doctrine is at least as old as Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521. Its sources are apparent in Brushaber v. Union Pacific R. Co., 1916, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 and Towne v. Eisner, 1918, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372, its fundamental principle being there stated by Mr. Justice Holmes as follows: "In short, the corporation is no poorer and the stockholder is no richer than they were before [the stock dividend]." Id., 245 U.S. at page 426, 38 S.Ct. at page 159. The doctrine has continued through Koshland v. Helvering, 1936, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, Helvering v. Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843, and Helvering v. Sprouse, 1943, 318 U.S. 604, 63 S.Ct. 791, 87 L.Ed. 1029. It is a closed circle doctrine, the theory of retention of capital within the fictional corporate entity, when perhaps the burgeoning of a modern corporation might be more realistically represented by a mathematical symbol $n$, the stockholders being deemed to receive valuable additional choses as their corporation's assets increase.

In this case, after the distribution, 2,000 more shares of A stock possessed fixed preferences both in dividends and in liquidation; 12,000 more shares of B stock gave increased rights to dividends and in payments on liquidation to the B class before there could be any additional participation by both classes in dividends or on liquidation. See note 1, supra. These were practical, money-wise changes as distinguished from alterations of rights. No changes whatsoever were effected in the strict legal rights of stockholders either vis-a-vis each other or the corporation.[3]

The Supreme Court has decided where the proportional interest of the stockholders remains the same and where stock dividends are paid strictly in kind, where there is no severance of capital, that the incidence of income taxation does not occur. Cf. Rottschaefer, Present Taxable Status of Stock Dividends in Federal Law, 28 Minn.L.Rev. 106. The questions of policy involved are not, however, for this court. The whole course of the law from Brushaber through Sprouse compels the nature of our decision here, viz., that the stock dividends are not taxable. We conclude that

---

ers of Class "B" Common Stock issued and outstanding shall then be entitled to be paid $5.00 per share.

However, should there be more than sufficient assets to pay all of the Class "A" Common Stockholders and all of the Class "B" Common Stockholders as outlined above, then each class of stock shall share in the surplus remaining in that proportion which the total of its stated capital compares with the total stated capital of both classes of stock outstanding at that time.

2. See Section 115(f) (1) of the Internal Revenue Code, 26 U.S.C.A. § 115(f) (1).

3. It can be argued: Is it not true that each old A shareholder received by the distribution the strict legal right to divi-

dends in preference to the B, and does not each new A certificate represent such a strict legal right which affects a strict legal right of the B? Like many tax cases those at bar present a study in semantics, if not in metaphysics. It is true following the distribution that the B stock cannot receive its dividend until what now is more of the A stock has received its dividends. But the legal rights of the A and B have not been changed or affected. If we may employ a homely but nonetheless useful "down-Delaware" phrase, the B stock, after the distribution, will eat lower down on the hog, but the hog has grown. The cuts, the proportional interests, of the A and the B remain the same.

Judge Van Fossan, dissenting in the Tax Court, reached the correct conclusion. See 14 T.C. at page 153. Cf. the decision of the Court of Appeals for the Seventh Circuit in the Tourtelot case.

The decisions of the Tax Court will be reversed.