JOHN A. MESSER, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32980.   Promulgated April 30, 1953.

*Harold B. White, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The respondent determined a deficiency in the amount of $16,801.68 in the income tax of the petitioner for the calendar year 1947. The only issue presented is whether certain stock dividends received by the petitioner in 1947 constitute income under section 115 (f) (1) of the Internal Revenue Code and are thus includible in his gross income.

The facts have been stipulated and are so found. The petitioner, a resident of Galax, Virginia, filed his income tax return for the calendar year 1947 with the collector of internal revenue for the district of Virginia. In 1933, the petitioner became a stockholder in The Webb Furniture Company, Inc., a Virginia corporation (hereinafter referred to as the Webb Company). The petitioner has been a member of the board of directors of the Webb Company since August, 1932, and chairman of the board since November 1933. At various times he has also served as president, vice president, or treasurer of the Webb Company. On December 13, 1941, and at every annual meeting of the Webb Company's board of directors held through December 31, 1949, a resolution was passed to the effect that the petitioner as chairman of the board be given full authority to set all salaries and decide if a dividend or bonus was to be paid and the amount thereof.

The authorized capital stock of the Webb Company in 1947 consisted of 3,000 shares of no par value common stock and 3,000 shares of $100 par value preferred stock.[1] In June 1947, the Webb Company reacquired 450 shares of its preferred stock from the Galax Mirror Company, Inc., paying $45,000 therefor, and 422 shares of the preferred stock by cancellation of the stock accounts of J. A. Messer, Jr., Kenneth G. Messer, and Duane E. Ward.[2]

---

[1] The common stock was the only class having voting rights. The preferred stock had a cumulative annual dividend of 5 per cent payable semiannually, which was to be paid prior to any payment of dividends on the common stock. The preferred stock also had liquidating preferences to the extent of par value plus accrued dividends and was subject to redemption by the corporation at any time on the same basis.

[2] During the year 1945, 447 shares of preferred stock were regained by the corporation by payment of $100 per share to stockholders who were in no way connected with the Messer family. The shares were acquired for petitioner's account and were charged to "stock account—J. A. Messer, Sr." on the corporation's books. On April 30, 1946, petitioner not having made any payments for those shares, relinquished his rights to them and they were sold to J. A. Messer, Jr., Kenneth G. Messer, and Duane E. Ward, all of whom were employees of the company. Arrangements were made for the shares to be paid for over a period of 10 years. The transaction was recorded on the company books as follows:

| J. A. Messer, Jr. | Stock Account | $15,800 |
|---|---|---|
| K. G. Messer | Stock Account | 15,800 |
| D. E. Ward | Stock Account | 13,100 |
| Stock Account | J. A. Messer, Sr. | $44,700 |

These stock accounts were listed as "other assets" on the balance sheet of the corporation. As of June 1947, J. A. Messer, Jr., had made no payments on his stock account;

Pursuant to two resolutions passed during the month of June 1947, the Webb Company issued, on June 30, 1947, 872 shares of its preferred stock to the preferred stockholders of record. Although the dividend was declared in two separate parts on different days in June 1947, the acquisition of the stock and its subsequent distribution pursuant to the two declarations were all part of a single transaction executed in accordance with a preexisting plan.[3] The petitioner, who before the dividend had owned 479 shares of the preferred stock, received 193 shares as his portion of this dividend.[4]

The following schedule indicates the ownership of the common and preferred stock of the Webb Company immediately prior to June 1947, the relationship of the stockholder to petitioner, the distribution of the preferred stock dividend, and the ownership of the preferred stock thereafter:

| Stockholder | Relationship to petitioner | Common stock | Preferred stock before dividend | Preferred stock dividend | Preferred stock after dividend |
|---|---|---|---|---|---|
| John A. Messer, Sr | Petitioner | 2150 [71.6667%] | 479 [15.9667%] | 193 | 672 [22.4%] |
| Mrs. J. A. Messer, Sr | Wife | 200 | 370 | 149 | 519 |
| Kenneth G. Messer | Son | 150 | 407 | ¹100 | 351 |
| John A. Messer, Jr | Son | 150 | 418 | ²104 | 364 |
| Beatrice Messer Nunn | Daughter | 150 | 234 | 94 | 328 |
| Gertrude Messer Cheek | Daughter | 150 | 219 | 88 | 307 |
| J. A. Messer, III | Grandson | | 20 | 8 | 28 |
| R. R. Nunn, Jr | Grandson | | 20 | 8 | 28 |
| J. J. Nunn | Grandson | | 20 | 8 | 28 |
| Judith Nunn | Granddaughter | | 20 | 8 | 28 |
| Barbara Louise Cheek | Granddaughter | | 20 | 8 | 28 |
| Mary A. Messer | Granddaughter | | 20 | 8 | 28 |
| Douglas G. Messer | Grandson | | 20 | 8 | 28 |
| Paul D. and Roberta Wilson. | | | 15 | 6 | 21 |
| Samuel O. Boyer | | | 17 | 6 | 23 |
| Duane E. Ward | | 50 | 245 | ³73 | 210 |
| Sam C. Hampton | | | 6 | 3 | 9 |
| Galax Mirror Co., Inc.⁵ | | | 450 | ⁴0 | 0 |

¹ Dividend paid on 251 shares.
² Dividend paid on 260 shares.
³ Dividend paid on 137 shares.
⁴ No dividend paid on these shares.
⁵ The Galax Mirror Company, Inc., had acquired 1,000 shares of preferred stock of Webb Company in 1933 as payment of an open account indebtedness. Between 1934 and 1947, all but 450 of those shares had been redeemed by the Webb Company or transferred to other shareholders. The Galax Mirror Company, Inc., had an authorized capital of 1,000 shares of common stock. Immediately prior to June 17, 1947, the petitioner owned 500 of those shares; his wife owned 200 shares; and his children owned the balance.

K. G. Messer had paid for two shares; and D. E. Ward had paid for 23 shares. On June 17, 1947, the purchase agreements for the shares for which payment had not been received were canceled and the stock accounts therefor were eliminated.

[3] A dividend of 314 shares was declared on June 17, 1947, and a dividend of 558 shares was declared on June 30, 1947. Although the purchase agreements of J. A. Messer, Jr., K. G. Messer, and D. E. Ward were canceled on June 17, 1947, only J. A. Messer, Jr., and K. G. Messer returned to the corporation their certificates for 316 shares at that time. K. G. Messer received a new certificate representing the two shares for which he had paid. Galax Mirror Company, Inc., was a stockholder of record as of June 17, 1947, but since arrangements had been completed for the redemption of its 450 shares of preferred stock it was specifically excepted from the list of shareholders to whom the dividend was to be paid. A check for $45,000 was issued to Galax Mirror Company, Inc., on June 27, 1947, as payment for its 450 shares. And on June 30, 1947, Ward returned his certificate for 131 shares of preferred and received a new certificate for the 23 shares for which he had paid. The 558 shares thus reacquired were the shares which were referred to in the dividend declaration of June 30, 1947. The parties have, for convenience, treated the two declarations as comprising one dividend of 872 shares and we shall do likewise.

[4] The dividend was an extraordinary dividend and was not one to which the preferred shareholders were entitled by reason of the preferred stock provisions.

1. It is important that the pertinent statutory provisions relating to the taxation of stock dividends be clearly understood. Section 115(f)(1) of the Internal Revenue Code in effect requires the taxation of a stock dividend to the extent that it constitutes "income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution." These provisions were first enacted into law in section 115(f)(1) of the Revenue Act of 1936.[5] Prior thereto, in 1920, the Supreme Court had held in *Eisner* v. *Macomber*, 252 U. S. 189, that a dividend of common upon common, supported by corporate earnings, where there were no other classes of stock outstanding, did not constitute a receipt or realization of income within the meaning of the Sixteenth Amendment. The Court developed the concept that, regardless of gain, there cannot be "income" unless it is "severed from" capital, and that there the stockholder had "received nothing out of the company's assets for his separate use." 252 U. S. at 207, 211. The decision "was promptly and sharply criticised," and over the years that followed, various decisions of the Supreme Court "limited *Eisner* v. *Macomber* to the kind of dividend there dealt with" and still later decisions "undermined further the original theoretical bases of the decision * * *." See *Helvering* v. *Griffiths*, 318 U. S. 371, 373, 375, 394.

In *Koshland* v. *Helvering*, 298 U. S. 441, the Court in effect held that a dividend of common paid to the holders of the preferred constituted income within the meaning of the Sixteenth Amendment. The Court distinguished *Eisner* v. *Macomber*, and made it plain that it had already recognized "the distinction between a stock dividend which worked no change in the corporate entity, the same interest in the same corporation being represented after the distribution by more shares of precisely the same character, and such a dividend where there had either been changes of corporate identity or a change in the nature

[5] Section 115 (f) (1) is phrased in terms of a double negative:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

    *       *       *       *       *       *       *

(f). STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

The provisions as they were originally reported to and passed by the House in H. R. 12395, 74th Cong., 2d Sess., read as follows:

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in stock of the corporation or in rights to acquire stock of the corporation shall be treated as a taxable dividend to the extent that such distribution constitutes income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution and represents a distribution of earnings or profits accumulated after February 28, 1913.

However, certain changes were made by the Senate in section 115 (a), and it was thought necessary to change the wording of section 115 (f) (1) to conform to those changes. The report of the Senate Finance Committee (S. Rept. No. 2156, 74th Cong., 2d Sess., pp. 18–19) plainly indicates that the rewording was not intended to alter the effect of these provisions.

of the shares issued as dividends whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest." 298 U. S. at 445. The Court declared further (298 U. S. at 445–446):

Under our decisions the payment of a dividend of new common shares, conferring no different rights or interests than did the old,—the new certificates, plus the old, representing the same proportionate interest in the net assets of the corporation as did the old,—does not constitute the receipt of income by the stockholder. On the other hand, where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented he receives income. The latter type of dividend is taxable as income under the Sixteenth Amendment.

See also *Helvering* v. *Gowran*, 302 U. S. 238, 241 (stock dividend of preferred paid to holders of the common where both common and preferred were outstanding).

Shortly after the decision in *Eisner* v. *Macomber*, Congress had provided in section 201 (d) of the Revenue Act of 1921 that "A stock dividend shall not be subject to tax * * *." However, it became increasingly clear from the subsequent decisions [6] that such a sweeping exemption from tax was not required by *Eisner* v. *Macomber*, and it was while the *Koshland* case was pending that the new statutory provisions, here involved, made their appearance in the course of the consideration of the bill which became the Revenue Act of 1936. Indeed the *Koshland* case was decided somewhat over a month before the 1936 Act became law.

The new legislation eliminated the exemption and provided in substance that a stock dividend may be taxed to the extent that it constitutes "income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution." These new provisions came before the Supreme Court in *Helvering* v. *Griffiths*, 318 U. S. 371, which involved a distribution of common on common and in which the Court was asked to reexamine *Eisner* v. *Macomber*. The Court did not approve *Eisner* v. *Macomber* as a correct interpretation of the Sixteenth Amendment, but it read the 1936 Act merely as adopting the existing decisions, and freezing them, so to speak, into the new statutory provisions. Cf. *Parker* v. *Motor Boat Sales*, 314 U. S. 244. Thus, the words "within the meaning of the Sixteenth Amendment" in section 115 (f) (1) were interpreted to mean within the meaning of the Sixteenth Amendment as it had been construed up to that time or at least up to the time that the dividend had been received. See 318 U. S. at 394–395, 401. Accordingly, *Eisner* v. *Macomber* was still operative to exempt a dividend of common on common where no other

---

[6] Among the decisions limiting the effect of *Eisner* v. *Macomber* were: *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; *Cullinan* v. *Walker*, 262 U. S. 134; *Marr* v. *United States*, 268 U. S. 536. But cf. *Weiss* v. *Stern*, 265 U. S. 242.

class of stock was outstanding, but the limitations upon *Eisner* v. *Macomber*, such as those announced in the *Koshland* case, were also effective to render a stock dividend taxable in circumstances such as those described in the opinion in that case.

In applying the provisions of section 115 (f) (1), therefore, we are faced with the problem whether the stock dividend in question falls within the type exemplified by *Eisner* v. *Macomber* and the *Griffiths* case, on the one hand, or within the theory of cases such as the *Koshland* case, on the other hand. And in that connection, we must take into account the manner in which the Supreme Court, shortly after the *Griffiths* decision, attempted to accommodate itself to these two lines of cases in *Helvering* v. *Sprouse*, and *Strassburger* v. *Commissioner*, both reported in 318 U. S. 604.

In the *Sprouse* case, the corporation, which had outstanding voting common and nonvoting common, declared a dividend of nonvoting common upon all its outstanding stock. The taxpayer owned only voting common and resisted the tax on his dividend. In the *Strassburger* case the taxpayer was the sole stockholder in a corporation which theretofore had only common outstanding, and which had declared a dividend of nonvoting preferred. The Court held that these cases were ruled by the decision in the *Griffiths* case. In the *Strassburger* case, the Court noted that the distribution of the stock dividend to the sole stockholder "brought about no change whatever in his interest in the corporation. Both before and after the event he owned exactly the same interest in the net value of the corporation as before. At both times he owned it all and retained all the incidents of ownership he had enjoyed before." 318 U. S. at 607. And in the *Sprouse* case, the Court appeared to accept the taxpayer's factual contention that "the distribution of the dividend in nowise disturbed the relationship previously existing amongst all the stockholders, or that previously existing between the * * * [taxpayer] and the corporation." 318 U. S. at 607. The *Koshland* case was distinguished from both the *Sprouse* and *Strassburger* cases on the ground that "to render the dividend taxable as income, there must be a change brought about by the issue of shares as a dividend whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest." 318 U. S. at 608.

2. We come to the application of the foregoing principles to the facts of this case. Immediately prior to the declarations of the dividends involved herein in June 1947 the corporation had outstanding 3,000 shares each of common and preferred. All of the common stockholders owned some preferred, but a number of the preferred stockholders owned no common. The percentage of common held by each stockholder was in no case the same as the percentage of his preferred.

Thus, the petitioner owned 71.6667 per cent of the common, but only 15.9667 per cent of the preferred. The 872 shares of preferred stock which were distributed as stock dividends were part of the 3,000 shares of outstanding preferred, and were reacquired for that purpose by the corporation.[7] Such shares were distributed only to the holders of preferred, and there is no dispute that the corporation's accumulated earnings and profits were sufficient to support a dividend equal in amount to the value of the 872 shares distributed.

Upon completion of the distributions, each holder of preferred had acquired not only additional shares thus giving him greater rights in relation to the corporate enterprise, but his percentage of ownership had increased. In the case of petitioner, the percentage of ownership of preferred rose from 15.9667 to 22.4. This is therefore not a case like *Strassburger* where the stockholder "owned exactly the same interest in the net value of the corporation as before"; nor is it like *Sprouse* where the distribution was regarded as leaving unaffected the relationship previously existing amongst all the stockholders, or previously existing between the stockholder and the corporation. 318 U. S. at 607.

Similarly this case is substantially different from *Tourtelot* v. *Commissioner*, 189 F. 2d 167 (C. A. 7), and *Wiegand* v. *Commissioner*, 194 F. 2d 479 (C. A. 3), both reversing decisions reported as *Edwin L. Wiegand*, 14 T. C. 136. In the *Tourtelot* case, each stockholder owned the identical percentage of stock of both classes outstanding, and received 50 per cent stock dividends on both classes of stock, each dividend being in the class of stock with respect to which it was distributed. In the end, the stockholder's percentage of interest in each class of stock was the same as before the distribution of the dividend. This was regarded as a bar to the application of the *Koshland* line of cases. The *Wiegand* case was concerned with the same corporate stock dividends, but each of the stockholders there involved owned either only one class of stock, or stock of both classes but not in the same proportion. Nevertheless, since stock dividends were paid on both classes of stock in the same percentages, the Court of Appeals concluded that "No changes whatsoever were effected in the strict legal rights of stockholders either *vis-a-vis* each other or the corporation." 194 F. 2d at 481. The court regarded as of crucial importance

---

[7] The stipulated facts make it plain and we so find as an ultimate fact that the redemption of the 872 shares of stock and the declaration of the dividend were merely steps in the execution of a single plan. The Galax Mirror Company, Inc., a corporation controlled by petitioner, was specifically excluded from the first dividend declaration (see footnote 3, *supra*), although it was a stockholder of record, since the plan to redeem its stock had already been formulated. The purchase agreements of J. A. Messer, Jr., K. G. Messer, and D. E. Ward were canceled on the same day that the first dividend was declared. It would be unrealistic to consider these transactions as separate, rather than as part of a single scheme whereby the stock was reacquired for the purpose of immediately redistributing it as a dividend.

the fact that as to each stockholder, the percentage ownership in the respective classes of stock remained the same after the distribution of the stock dividends as before. We need not therefore consider whether to adhere to our own decision in the *Wiegand* or *Tourtelot* cases or to follow those of the courts of appeals (cf. *American Coast Line* v. *Commissioner*, 159 F. 2d 665, 668–669 (C. A. 2) ; *Estate of William E. Edmonds*, 16 T. C. 110, 117), for the present case is sharply distinguishable. Here the percentages of stock ownership did not remain the same. We have here "a change brought about by the issue of shares as a dividend whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest." *Helvering* v. *Sprouse*, 318 U. S. at 608. The theory of the *Koshland* case requires approval of the respondent's position here. This dividend, paid out of corporate earnings and profits, was "income" to petitioner "within the meaning of the Sixteenth Amendment" as interpreted in the *Koshland* case, and is therefore taxable under section 115 (f) (1) of the Code, as construed by the *Griffiths* case.

3. Petitioner argues that the dividend of 193 shares of preferred on his preferred did not result in the receipt of any income because the distribution of a total of 872 preferred shares put an additional burden of $87,200 (in par value) on the common stock, and as the owner of some 71 per cent of the common the greater part of that burden fell upon him. Thus he contends that the transaction resulted in a loss to him rather than a gain. We think the contention is unsound.

Petitioner misconceives the entire basis for the inclusion of corporate dividends in taxable income. The declaration and payment of a dividend is almost never an income producing event in the sense that the stockholder is enriched at that moment. To the extent that there is a distribution of corporate assets as a dividend such distribution frequently reduces the value of the stock. The point is that the stockholder is not taxed upon corporate earnings until there has been a distribution, and it is at that time that he must account tax-wise for those earnings, even though they may have been received by the corporation over a period of years, and even though the distribution itself may shrink the value of his stock. This is fundamental in the taxation of corporate dividends. The very act whereby corporate earnings are paid out reduces the assets of the corporation and is therefore likely to reduce the value of the stock. Had the corporation in this case distributed $87,200 in cash to the preferred stockholders, there could be no question that the distribution, having been made from corporate earnings, would have been a taxable dividend, notwithstanding that such distribution would have reduced the

value of the common. The situation is no different where the distribution is made in property or even in stock if it otherwise qualifies as a taxable stock dividend under the *Koshland* line of cases.

Indeed, a further ground for supporting the Commissioner's determination is that the corporation acquired the 872 shares by paying $45,000 in cash and canceling $42,200 in accounts receivable; and since it acquired such shares for the purpose of distributing them as a stock dividend, the transaction must be considered as a whole. Had the corporation distributed such cash and accounts receivable to the preferred stockholders, it would certainly have been a taxable dividend, notwithstanding that the recipients might have purchased the 872 shares directly with the proceeds of such distribution. The effect of the transaction on the value of the common would be the same whether it took that form or the form actually employed in this case. The end result in either case would be the distribution of corporate earnings in such manner as to constitute a taxable dividend. Cf. *C. P. Chamberlin*, 18 T. C. 164. Petitioner's contention does not furnish a sound basis for rejecting the theory of the *Koshland* line of decisions, which is otherwise applicable here.

The parties have stipulated that the fair market value of the preferred stock was $80 per share. The deficiency was determined by the Commissioner on the basis of a fair market value of $100 per share. Accordingly, a recomputation is necessary.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

